IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| NATHANIEL KING,<br>    Plaintiff | § § § | |
| vs. | § § | |
| DFW INTERNATIONAL AIRPORT BOARD,<br>    Defendant | § § § § | CIVIL ACTION NO. 4:22-cv-929 |

## PLAINTIFF'S ORIGINAL COMPLAINT

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, NATHANIEL KING, Plaintiff in the above styled cause who files this, his Original Complaint complaining of Defendant DFW INTERNATIONAL AIRPORT BOARD and, in support thereof, would show as follows:

### I.
### Jurisdiction

1. Jurisdiction in this court arises under 28 U.S.C. 1331 due to the fact that the cause of action asserted by Plaintiff herein constitutes a federal question. This court has pendent jurisdiction over all state claims presented herein under 28 U.S.C. §1367.

### II.
### PARTIES

2. Plaintiff is a citizen of the United States, and resident of Tarrant County, Texas.

3. Defendant, DFW INTERNATIONAL AIRPORT BOARD, is a governmental entity co-owned by the municipalities of Dallas and Fort Worth, Texas. It may be served through its Chief Executive Officer, Sean Donohue, 3200 East Airfield Drive, DFW Airport, Texas 75261.

## III.
## EXHAUSTION OF ADMINISTRATIVE REMEDIES

4.   Plaintiff timely filed a charge of discrimination with the EEOC complaining of DFW International Airport Board.

5.   Plaintiff received a right to sue letter from the EEOC and files this lawsuit within the 90 day period provided by statute.

## IV.
## FACTS

6.   Plaintiff was hired by the Defendant into the position of Civilian Security Officer on February 8, 2016.

7.   At the time of his hire, Plaintiff suffered from the disability of having the following conditions: sciatica, herniated discs in the low back, degenerative disc disorder, arthritis in both hips, arthritis in both knees and flat feet.

8.   A veteran of the United States Army, Plaintiff was treated for the above referenced disabilities both prior and during his tenure with the Defendant at the Veteran's Administration.

9.   Plaintiff was initially able to perform his job without accommodation; however, the daily bending and stooping eventually aggravated his disabilities to the point where his muscles would spasm, thus rendering the Plaintiff in pain and barely able to move.  Specifically, the Plaintiff had a difficult time stooping and bending over to search bags and the more he engaged in this activity the worse it aggravated his disability.

10.  Management was aware of Plaintiff's increasing pain and discomfort in performing his job. For instance, on one occasion in late 2018, a co-worker, in the presence of management, had to carry the Plaintiff to his car because his back had gone into such bad spasms.  Plaintiff's condition got so bad that he was placed on several leaves of absence under the FMLA in 2019.

11. In early 2020, the Defendant put the Plaintiff on modified duty where he sat at a desk at Terminal E. However, this modified duty, which was not provided, according to the Defendant, as a reasonable accommodation under the American with Disabilities Act (hereafter referred to as the "ADA"), was a temporary position which expired in April of 2020.

12. On or about April 24, 2020, after the Plaintiff provided his medical records on multiple occasions to the Defendant, which included both HR and a third party administrator named "Matrix" that was utilized by the Defendant to administer employees with disabilities, the Defendant placed the Plaintiff on short term disability leave.

13. The Defendant maintained a disability leave policy, of which management was aware, that stated that an employee shall be terminated if on leave for more than 180 days.

14. In May 2020, while on short term disability leave, Plaintiff began emailing the Risk Management Department, the HR Department and "Matrix" representatives regarding reinstatement to his old position, but with reasonable accomodation. In response, the Plaintiff would either receive no response whatsoever or he would be re-routed to someone else who would also re-route his phone call to others. As the emails continued, Plaintiff was simply being tossed back and forth between the above three departments with nobody giving him any substantive help on reinstatement.

15. Eventually, a meeting was held on August 25, 2020 with management and the Plaintiff regarding whether the Plaintiff could be reinstated to his old position, but with reasonable accommodation due to his disability. The attendees at this meeting were the Plaintiff, Carl Young - HR Representative, Mark Young - Risk Management Representative, Timm Richardson - Matrix Representative and Barry Stephens - Senior Manager of Airport Security.

16. The accommodation to be considered at the August 25 meeting was the Plaintiff's prior request for a higher table so as to avoid bending and stooping while searching bags. Unfortunately, the attendees notified the Plaintiff at this meeting that the Defendant would not be accommodating the Plaintiff with a higher table as that would represent an unreasonable burden on the Defendant.

17. The attendees at the August 25 meeting also did not reassign the Plaintiff to another position that was less physically demanding, thus leaving the Plaintiff on disability leave without apparent options.

18. On August 26, 2020, the Plaintiff applied for two positions that required no accommodation for his disability, of which the Plaintiff knew were vacant and of which the Plaintiff possessed the qualifications to perform the job. These positions were the Tactical Telecommunicator position and the Terminal Experience Supervisor Position. Unfortunately, the Defendant notified the Plaintiff that these positions had been filled.

19. In early September, Plaintiff began emailing HR Representative Mark Young about any openings for reassignment. Plaintiff did so because he was advised at the August 25 meeting that Mark Young could handle his requests for reassignment. Though ignoring the majority of the Plaintiff's emails, Mark Young did email the Plaintiff in September advising him of job openings for Tactical Telecommunicator and Airfield Operations Agent. Upon receipt of this email, Plaintiff promptly applied for the aforementioned positions because he knew he was qualified for them, but was advised these positions had been filled.

20. In October 2020, Plaintiff continued to email HR Representative Mark Young about possible openings and then, after receiving no response, emailed Risk Manager Carl Young with the same requests. After being ignored by both, Plaintiff eventually requested a list of openings

from his wife who was also employed by the Defendant.  Plaintiff's wife provided the Plaintiff this list and the Plaintiff proceeded, on November 6, 2020, to apply for the following forty one (41) separate positions for which he possessed the appropriate qualifications.  The positions are as follows:  Terminal Experience Supervisor, Tactical Telecommunicator, Parking Guest Contract Services Supervisor, Multimedia Specialist, Concessions Compliance Analyst, Access DFW Trusted Agent, Airfield Operations Agent, Business Specialist, Develop & Leasing Administrator, Communication & Marketing Specialist, Multimedia Coordinator, Airport Customer Experience Specialist, Customer Programs Trainer, Market Research Analyst, Survey Technician, Construction Inspector, Plans Examiner/Inspector, Quality Control Technician, Systems Performance Analyst, Automotive Technician, Lead Automotive Technician, Radio & Mobile Electrician System Technician, Electrician II, Signs & Marking Technician, Electronics Technician, Lead Electronics Technician, Environmental Analyst, Waste/Recycling Technician, Talent Acquisition Specialist, AOC Communications Specialist, Airfield Operations Officer, Assistant Airfield Ops Officer, Corporate Aviation Rep, Transportation Business Specialist, Contract Services Quality Agent, Contract Administrator, Civilian Detention Officer, Access DFW Trusted Agent, Research & Analytics Specialist and Risk Analyst.  Many of these positions required no accommodation for the Plaintiff's disability as they were desk jobs.  Plaintiff was able to perform a desk job with no accommodation.

21. After receiving Plaintiff's application for the above positions, the Defendant falsely advised the Plaintiff that the above positions had been filled.  Plaintiff knows this to be false because his wife held a position at the company where she could see the list of vacant positions and notified the Plaintiff of those vacancies.

22. After falsely advising the Plaintiff that the positions were filled, the Defendant submitted a termination letter to the Plaintiff on or about December 11, 2020 advising him that he was terminated. The Defendant relied on the 180 day rule for disability leave for its basis for terminating the Plaintiff. However, the Plaintiff contends this is a false basis for termination and that the Defendants were merely using dishonest tactics (saying the positions had been filled) so that the Plaintiff would remain on leave until his 180 days expired, thus giving the Defendant a reason for termination that appeared on the surface to be legitimate.

V.
**CAUSES OF ACTION**

23. Plaintiff hereby makes a claim for disability discrimination under the American with Disability Act (the "ADA") and Title VII of The Civil Rights Act of 1964. *42 USC 2000, et seq., 42 U.S.C.A. § 12101 et seq.* The Plaintiff (1) has a disability; (2) was qualified for the job; and (3) was subject to an adverse employment decision on account of his disability.

24. The Defendant discriminated against the Plaintiff on the basis of his disability when it refused to reassign the Plaintiff to any of the positions for which he applied for in August, September and November and lied to the Plaintiff stating they were filled. The Defendant was aware of his disability and his difficulties in performing the Civilian Security Officer position, yet withheld from him desk jobs that he could have filled with no need for a reasonable accommodation. The Defendant committed a final act of disability discrimination when it terminated his employment in December of 2020. The Defendant was aware that he could only be on disability leave, according to company policy for 180 days, and deliberately withheld reassignment so that his 180 days would run and he would have to be fired.

25. The Defendant further discriminated against the Plaintiff when it refused to provide him reasonable accommodation to enable him to continue performing the Civilian Security Officer

position, a position he had held since 2016. Though aware of Plaintiff's disability and the difficulties that posed to him performing the Civilian Security Officer position without reasonable accommodation, the Defendant refused to provide him with a taller table and instead lied stating that this would place an unreasonable burden on them.

26. The Defendant retaliated against the Plaintiff for requesting a reasonable accommodation for his disability in violation of the American with Disabilities Act retaliation statute. *See 42 USC §12203* Plaintiff's request for a reasonable accommodation was a protected activity. Unfortunately, the Defendant retaliated against the Plaintiff for engaging in this protected activity by refusing to consider him for any of the forty one (41) positions he applied for in August, September and November 2020. Further, his termination in December of 2020 was a final act of retaliation for Plaintiff's request for reasonable accommodation. The Defendant was aware that he could only be on disability leave, according to company policy for 180 days, and deliberately withheld reassignment so that his 180 days would run and he would have to be fired.

## VI.
## DAMAGES

27. Plaintiff prays for back pay damages for the time he was placed on short term disability leave in April of 2020 to the present. 42 USC 1981a, 42 USC 2000ee-5(g), 42 USC 12117(a).

28. Plaintiff prays for front pay damages for the period of time in the future where he is not gainfully employed with a comparable job. 42 USC 1981a(b).

29. Plaintiff prays for emotional pain and suffering, inconvenience, mental anguish and loss of enjoyment of life pursuant to 42 USC 1981a(b).

30. Plaintiff prays for attorney fees for prosecuting this action pursuant to 42 USCA 12205.

31. Plaintiff prays for costs of court pursuant to 42 USCA 12205.

32. Plaintiff prays for litigation expenses pursuant to 42 USCA 12205.

33. Plaintiff prays for punitive damages due to the Defendant's knowing and malicious violation of the ADA.   42 USC 1981a(b)(1)

34. Plaintiff prays for prejudgment and post judgment interest.

## VII.
## JURY DEMAND

34. Plaintiff hereby demands a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure.

## VIII.
## PRAYER

35.   WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that upon final trial of this cause that the Court grant Judgment against Defendant and award Plaintiff damages for back pay, emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, front pay, punitive damages, attorney fees, litigation costs, expert witness fees, costs of court, prejudgment and post judgment interest.

Respectfully Submitted,

/s/ Wes Dauphinot
Wes Dauphinot
Law Office of Wes Dauphinot, P.C.
900 West Abram
Arlington, Texas 76013
(817) 462-0676
(817) 460-9355 facsimile
State Bar No. 00793584
Email: wes@dauphinotlawfirm.com
ATTORNEY FOR PLAINTIFF
ATTORNEY IN CHARGE

       /s/ Hani F. Kobty_____
Hani F. Kobty
Kobty Law Firm
900 West Abram
Arlington, Texas 76013
(817) 223-0989
(817) 549-9325 facsimile
State Bar No. 24087855
Email: hani@kobtylawfirm.com
ATTORNEY FOR PLAINTIFF