**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | | |
|---|---|---|
| **NATHANIEL KING** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. 4:22-CV-929-P** |
| | § | |
| | § | |
| **DALLAS-FORT WORTH** | § | |
| **INTERNATIONAL AIRPORT BOARD,** | § | |
| | § | |
| **Defendant.** | § | |

**DEFENDANT DALLAS-FORT WORTH**
**INTERNATIONAL AIRPORT BOARD'S**
**BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

**TABLE OF CONTENTS**

I.   NATURE OF THE CASE ................................................................................................1

II.  SUMMARY OF THE MOTION..................................................................................2

III. STATEMENT OF FACTS............................................................................................2

    A.  Plaintiff's Employment with DFW as a Civilian Security Officer. ...................2

    B.  Plaintiff's First Short-Term Disability Leave of Absence (November 9, 2019 to January 13, 2020)........................................................................................................................3

    C.  Plaintiff is Temporarily Assigned to the E Dock on Modified Duty. ...............4

    D.  Plaintiff's Modified Duty Assignment Ends. ....................................................5

    E.  Plaintiff's Second Short-Term Disability Leave of Absence (April 25, 2020 to August 18, 2020)........................................................................................................................5

    F.  Plaintiff Requests a Reasonable Accommodation..............................................6

        *1.   Plaintiff requests an accommodation based on physical limitations. .........6*

        *2.   Plaintiff's request cannot be accommodated in the CSO position............7*

        *3.   Plaintiff requests to be reassigned to accommodate his restrictions but does not apply for any available positions. ................................................................8*

    G.  Plaintiff is Administratively Terminated for Exhausting the Maximum Amount of Short-Term Disability Leave Allowed Under DFW Policy.......................................................9

IV. ARGUMENT AND AUTHORITIES .......................................................................10

    A.  Summary Judgment Standard...........................................................................10

    B.  DFW is entitled to summary judgment on Plaintiff's disability discrimination claim. ...10

1.  *Plaintiff's discrimination claim fails as a matter of law because he is not a qualified individual.*..................................................................................................*11*
2.  *Plaintiff cannot show a causal nexus between his disability and any alleged adverse employment action.* ...............................................................................*16*
3.  *Plaintiff did not suffer an adverse employment action by DFW allegedly refusing to reassign him because he did not apply for any positions in order to be considered for reassignment.*......................................................................................*19*

C.  DFW is Entitled to Summary Judgment on Plaintiff's Retaliation Claim. ......................20
1.  *Plaintiff cannot establish a causal connection between his request for accommodation and his administrative termination.*...............................................*20*
2.  *Plaintiff cannot show a causal connection between his request for accommodation and DFW's alleged refusal to reassign him.*.............................................*22*
3.  *Plaintiff cannot show that he suffered an adverse employment action by DFW allegedly refusing to reassign him.* ...........................................................*22*

D.  Even if Plaintiff could make his *prima facie* case for discrimination and retaliation, DFW is entitled to summary judgment because it has articulated a legitimate nondiscriminatory, nonretaliatory reason for Plaintiff's termination.............................23

V.  CONCLUSION .............................................................................................................23
VI. PRAYER ........................................................................................................................24

## TABLE OF AUTHORITIES

### Cases

*Adams v. Travelers Indem. Co. of Conn.*,
465 F.3d 156, 164 (5th Cir. 2006) ...............................................................................10

*Burch v. City of Nacogdoches*,
174 F.3d 615, 620 (5th Cir. 1999) ...............................................................................14

*Burger v. Cent. Apartment Mgmt., Inc.*,
168 F.3d 875, 879 (5th Cir. 1999)..........................................................................20, 22

*Chandler v. City of Dall.*,
2 F.3d 1385, 1393 (5th Cir. 1993) ...............................................................................12

*Custard v. Alief Indep. Sch. Dist.*,
No. CIV.A. H-04-1882, 2005 WL 1960058, at *5 (S.D. Tex. Aug. 16, 2005)...........................12

*EEOC v. Chevron Phillips Chem. Co., LP*,
570 F.3d 606, 615 (5th Cir. 2009) ...............................................................................10

*EEOC v. LHC Grp., Inc.*,
73 F.3d 688, 694 (5th Cir. 2014) ................................................................. 10-12, 16

*Evans v. City of Houston*,
246 F.3d 344, 354 (5th Cir. 2001) ................................................................. 21

*Foreman v. Babcock & Wilcox Co.*,
117 F.3d 800, 810 (5th Cir. 1997) ................................................................. 14

*Hernandez v. City of Corpus Christi*,
820 F. Supp. 2d 781, 797 (S.D. Tex. 2011) ................................................... 20

*Jenkins v. Cleco Power, LLC*,
487 F.3d 309, 315 (5th Cir. 2007) ................................................................. 14

*Kapche v. City of San Antonio*,
304 F.3d 493 (5th Cir. 2002) ......................................................................... 12

*Laxton v. Gap Inc.*,
333 F.3d 572, 578 (5th Cir. 2003) ................................................................. 23

*Lynch Prop., Inc. v. Potomac Ins. Co. of Ill.*,
140 F.3d 622, 625 (5th Cir. 1998) ................................................................. 10

*Lyons v. Katy Indep. Sch. Dist.*,
964 F.3d 298, 305 (5th Cir. 2020) ................................................................. 21

*McDonnell Douglas Corp. v. Green*,
411 U.S. 792 (1973) ...................................................................................... 10

*McIntyre v. San Antonio Water Sys.*,
No. 16-CV-399 (RCL), 2017 WL 1532608, at *9 (W.D. Tex. Apr. 26, 2017) .......................... 23

*Pegram v. Honeywell, Inc.*,
361 F.3d 272, 282 (5th Cir. 2004) ................................................................. 19

*Pinkerton v. Spellings*,
529 F.3d 513519 (5th Cir. 2008) ................................................................... 19

*Raggs v. Miss. Power & Light Co.*,
278 F.3d 463, 471-72 (5th Cir. 2002) ............................................................ 21

*Seaman v. CSPH, Inc.*,
179 F.3d 297, 301 (5th Cir. 1999) ................................................................. 21

*Simon v. Honeywell, Inc.*,

642 F.2d 754, 755 n. 3 (5th Cir. 1981) ............................................................................20

*Swanson v. Gen. Servs. Admin.*,
110 F.3d 1180, 1188 (5th Cir. 1997) ............................................................................21

*Thompson v. Microsoft Corp.*,
2 F.4th 460, 470 (5th Cir. 2021) ...................................................................................19

*Tirumalasetti v. Caremark RX, Inc.*,
No. 3:05-CV-1847-B, 2007 WL 9712193, at *6 (N.D. Tex. Feb. 20, 2007) ..............23

*Zenor v. El Paso Healthcare Sys., Ltd.*,
176 F.3d 847, 853 (5th Cir. 1999) ................................................................................11

## **Statutes**

42 U.S.C. § 12111 ............................................................................................... 11-12

42 U.S.C. § 12112 ......................................................................................................10

Fed. R. Civ. P. 56(a) ..................................................................................................10

## **Regulations**

29 C.F.R. § 1630............................................................................................... 11-12

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | | |
|---|---|---|
| **NATHANIEL KING** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| v. | § | **CIVIL ACTION NO. 4:22-CV-929-P** |
| | § | |
| | § | |
| **DALLAS-FORT WORTH** | § | |
| **INTERNATIONAL  AIRPORT BOARD,** | § | |
| | § | |
| **Defendant.** | § | |

**DEFENDANT DALLAS-FORT WORTH
INTERNATIONAL AIRPORT BOARD'S
BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

Dallas-Fort Worth International Airport Board ("DFW" or "Defendant"), Defendant in the above-referenced case, files this Brief in Support of its Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56. In support, DFW respectfully shows the Court as follows:

## I.    NATURE OF THE CASE

DFW operates the Dallas-Fort Worth International Airport ("DFW Airport") and employs over 2,000 individuals. This case involves an employment dispute arising out of DFW's decision to administratively terminate Plaintiff Nathaniel King's ("Plaintiff") employment as a Civilian Security Officer. Plaintiff alleges that DFW violated the Americans with Disabilities Act and the ADA Amendments Act (collectively the "ADA") by: (1) discriminating against Plaintiff because of his disability in (a) denying his request for a reasonable accommodation, (b) refusing to reassign him, and (c) administratively terminating him; and (2) retaliating against Plaintiff for requesting a reasonable accommodation by (a) refusing to reassign him, and (b) administratively terminating him.

## II.    SUMMARY OF THE MOTION

DFW is entitled to summary judgment on all of Plaintiff's claims against it. First, DFW is entitled to summary judgment on Plaintiff's disability discrimination claim because: (1) Plaintiff was not a qualified individual as he could not perform the essential functions of his position with or without an accommodation, and he cannot identify any available position for which he was qualified and to which he could have been reassigned; (2) Plaintiff cannot establish a causal nexus between his disability and DFW's alleged refusal to reassign him; (3)  Plaintiff cannot establish a causal nexus between his disability and his termination because he was administratively terminated after exhausting the maximum amount of leave available under DFW policy; and (4) DFW allegedly refusing to reassign Plaintiff does not constitute an adverse employment action.

DFW is also entitled to summary judgment on Plaintiff's retaliation claim because: (1) Plaintiff cannot show a causal connection between his request for accommodation and DFW's alleged refusal to reassign him because he did not submit any applications for reassignment; (2) Plaintiff cannot show a causal connection between his request for accommodation and his termination because his administrative termination was not in temporal proximity to his request for accommodation; and (3) DFW allegedly refusing to reassign Plaintiff does not constitute an adverse employment action because he did not apply to any positions for reassignment.

Finally, DFW is entitled to summary judgment as Plaintiff was administratively terminated under a maximum allotted leave policy, which constitutes a legitimate nondiscriminatory and nonretaliatory reason, and Plaintiff has no evidence to show such reason is pretext.

## III.    STATEMENT OF FACTS

### A.  Plaintiff's Employment with DFW as a Civilian Security Officer.

On February 8, 2016, Plaintiff was hired by DFW as a Civilian Security Officer ("CSO") in the Airport Security Division ("ASD"). (C. Young Decl. at ¶ 3 and Ex. 1; App. 007). CSOs are

responsible for various security functions at DFW Airport. (A. Baucham Decl. at ¶ 3 and Ex. 1; App. 002 and 004-06). CSOs are assigned to various posts around DFW Airport on a rotating schedule by shift. (*Id*. at ¶ 4; App. 002).

On each shift, a CSO is assigned to one of more than 25 posts managed by ASD. (*Id*.). The number of active posts at any given time depends on the business needs of DFW Airport. (*Id*.). Likewise, the number of CSOs assigned to each post depends on the number of active posts, the duties required at each active post, and available CSOs on each shift. (*Id*.).

The various posts a CSO could be assigned to include inspecting vehicles and individuals entering through Air Operations Area gates, performing terminal security patrols by foot, performing perimeter vehicle patrols, and inspecting individuals entering through the employee portals and their personal belongings. (*Id*. at ¶ 5 and Ex. 1; App. 002 and 004-06). CSOs are expected to be able to perform any of the following at any given time as the duties required at each post differ and may change at a moment's notice, as is the nature of a security role:

- Climbs into, out of, and search under vehicles;
- Works in awkward positions such as kneeling, stooping, or squatting;
- Drives to locations on DFW Airport property, including the Air Operations Area;
- Sits for extended periods of time; and
- Walks for extended periods of time.

(*Id*. at ¶ 6 and Ex. 1; App. 002 and 004-006).

### B. Plaintiff's First Short-Term Disability Leave of Absence (November 9, 2019 to January 13, 2020).

During his employment with DFW, Plaintiff requested and received short-term disability leave on several occasions. (M. Young Decl. at ¶¶ 4-5 and 9-10; App. 040-42). DFW policy allows for a maximum period of 180 calendar days (173 calendar days plus a seven-day waiting period) of short-term disability leave during a rolling 12-month period. (*Id*. at ¶ 3 and Ex. 1; App. 040 and

045). As such, for purposes of this Motion, DFW focuses only on the short-term disability leave taken by Plaintiff in his last year of employment with DFW.

On November 14, 2019, Plaintiff requested short-term disability leave through Matrix Absence Management, Inc. ("Matrix") to begin on November 9, 2019 ("First STD Leave"). (*Id.* at ¶ 4 and Ex. 2; App. 040 and 049). DFW contracts with Matrix as its third-party administrator for review and decision on employee leaves of absence, including requests for short-term disability leave and requests for accommodations. (*Id.* at ¶ 2; App. 039-40). On January 13, 2020, Plaintiff returned to work from his First STD Leave with the following restrictions:

- Unable to stand greater than 20 minutes per hour;
- No repetitive bending, squatting, or stooping;
- Limit walking to less than one mile per work day; and
- Limit driving time to less than two hours per work day.

(*Id.* at ¶ 5 and Ex. 3; App. 040 and 050). During his First STD Leave, Plaintiff used 65 days of short-term disability leave. (*Id.* at ¶ 5; App. 040).

### C.  Plaintiff is Temporarily Assigned to the E Dock on Modified Duty.

To meet his restrictions, Plaintiff was temporarily assigned to a CSO post at the E Dock under DFW's Modified Duty Policy. (M. Young Decl. at ¶ 6 and Ex. 4; App. 040 and 051). The E Dock is not a standard post through which CSOs rotate. (A. Baucham Decl. at ¶ 8; App. 003). Rather, ASD assigns individuals on modified duty to work at the docks, including E Dock. (*Id.*). Based on his restrictions, DFW determined that this was the only place for Plaintiff to work with his restrictions. (C. Young Decl. at ¶ 4 and Ex. 1; App. 007-08 and 010). Notably, the duration of Plaintiff's restrictions was unknown when he returned in January 2020. (M. Young Decl. at Ex. 3; App. 050).

On January 28, 2020, Plaintiff requested that he be moved from his position on the E Dock to an administrative role within ASD. (M. Young Decl. at ¶ 7 and Ex. 6; App. 040-41 and 056).

After determining his request was not due to any change to his restrictions (i.e., a medical reason), his request was denied. (*Id*.). Additionally, it should be noted that there was not an administrative position available, and operationally the E Dock assignment was the only space available. (*Id*. at ¶ 7 and Ex. 5; App. 040-41 and 054).

### D. Plaintiff's Modified Duty Assignment Ends.

On April 1, 2020, Plaintiff informed DFW that he had seen his physician on March 18, 2020, his limitations had not changed, and his limitations were permanent. (M. Young Decl. at ¶ 8 and Exs. 7 and 3; App. 041, 058, and 050; *see* Matrix Decl. Ex. 1; App. 211). At this point, Plaintiff had been on a modified duty assignment for more than 60 days. (M. Young Decl. at ¶ 8; App. 041). DFW policy provides that a modified duty assignment is temporary and may be extended or ended as determined by DFW. (*Id*. at Ex. 4; App. 051). On April 20, 2020, after careful consideration, DFW informed Plaintiff that April 24, 2020, would be his last day on modified duty assignment because his restrictions had not changed and the duration of his restrictions remained unknown. (*Id*. at ¶ 8 and Ex. 8; App. 041 and 059). Plaintiff was advised of his option to apply for short-term disability with Matrix. (*Id*.).

### E. Plaintiff's Second Short-Term Disability Leave of Absence (April 25, 2020 to August 18, 2020).

On April 20, 2020, Plaintiff submitted an application for short-term disability leave to Matrix, which he requested to begin on or about April 25, 2020. (M. Young Decl. at ¶ 9 and Ex. 9; App. 041 and 060). On June 18, 2020, Matrix denied Plaintiff's application for short-term disability leave due to inadequate medical documentation. (*Id*.). On September 21, 2020, following the denial of his request for a reasonable accommodation and during his attempts to be reassigned, Plaintiff appealed Matrix's June 18 denial of his application for short-term disability leave. (*Id*. at ¶ 9 and Exs. 10 and 11; App. 041, 061, and 062).

On November 4, 2020, Matrix reversed its decision to deny Plaintiff's application for short-term disability and retroactively granted Plaintiff short-term disability leave beginning April 25, 2020. (*Id*. at ¶ 9 and Ex. 12; App. 042 and 064). Because he had already used 65 days of short-term disability leave during his First STD Leave, Plaintiff was approved for and received 115 days of short-term disability leave as a result of his successful appeal. (*Id*. at ¶ 9; App. 042). The maximum leave allowed under DFW policy is 180 days. (*Id*. at Ex. 2; App. 045). Accordingly, Plaintiff exhausted the maximum amount of short-term disability leave allowed on August 19, 2020. (*Id*. at ¶ 10 and Ex. 14; App. 042 and 066). Because Plaintiff was in the appeal process, this fact was not established until Matrix ruled on his appeal (*Id*. at ¶¶ 9-10; App. 041-42).

### F. Plaintiff Requests a Reasonable Accommodation.

#### 1. *Plaintiff requests an accommodation based on physical limitations.*

Following the end of his modified duty assignment, Plaintiff pursued a second short-term disability leave of absence, set forth above. (M. Young Decl. at ¶ 9; App. 041-42). About two months later, he also took steps to pursue a reasonable accommodation. (*Id*. at ¶ 11; App. 042). Around the time Matrix denied his second short-term disability leave application, Plaintiff began working with Matrix on his request for a reasonable accommodation. (*Id*. at ¶ 11 and Ex. 15; App. 042 and 069). On July 31, 2020, Plaintiff provided to Matrix a request for the following restrictions to accommodate his conditions related to his knees, hips, and back:[1]

- 30 minutes out of vehicle every two hours;
- No sit to stand more than five times per 30 minutes;
- High tables for inspections;
- No lifting of heavy items more than five times per hour;
- For every 45 minutes of walking, 15 minutes of sitting;
- No standing more than 20 minutes per hour; and
- Use of an elevator or use stairs only once every two hours.

---

[1] Plaintiff also identified flat feet as a disability; however, he admits he did not request an accommodation for that condition. (Pl.'s Dep. at 140:18-25 and 141:1-2; App. 138).

(*Id*. at ¶ 11 and Ex. 16; App. 042-43 and 081-83).

### 2. *Plaintiff's request cannot be accommodated in the CSO position.*

On August 18, 2020, an interactive meeting was scheduled to discuss Plaintiff's request for accommodation, which Plaintiff did not attend. (M. Young Decl. at ¶ 12 and Ex. 17; App. 043 and 084). On August 25, 2020, a second interactive meeting was scheduled to discuss Plaintiff's request for accommodation. (*Id*. at ¶ 12 and Ex. 18; App. 043 and 085). Plaintiff, ASD Senior Security Manager Barry Stevens, Senior ADA Compliance and Risk Analyst Mark Young, Senior Human Resources Consultant Carl Young, and Matrix Senior ADA Specialist Timm Richardson attended the meeting. (*Id*.).

During the interactive meeting, Plaintiff confirmed again that his restrictions were permanent. (Aug. 25, 2020 Mtg Tr. at 4:19-25 and 5:1-8; App. 202).[2] Stevens then reviewed the CSO job description and essential job functions, focusing on the fact that the job requires flexibility and that the CSOs be able to handle whatever is required of them at any post to which they may be assigned. (*Id*. at 7:9-17; App. 203). Plaintiff asked if it was possible to be assigned to a slower post with less activity. (*Id*. at 9:11-25, 10:1, 11:1-4; App. 203-04). Stevens responded that it was not possible because all CSOs are expected to be able to work at any post they may be assigned to and post assignments are made without regard to the individual CSO. (*Id*.; *see also* A. Baucham Decl. at ¶ 7; App. 003). Plaintiff next asked why he could not continue working as he had been with co-workers assisting him when he was unable to perform certain job duties. (Aug. 25, 2020 Mtg Tr. at 13:5-25, 14:1-3, and 15:4-13; App. 204-205).[3]  Stevens referenced his previous response

---

[2] Plaintiff recorded the August 25, 2020 interactive meeting without the permission of the attendees in violation of DFW policy. (C. Young Decl. at ¶ 8 and Ex. 5; App. 009 and 023; Pl.'s Dep. at 234:22-25 and 235:1-12; App. 162). The recording was produced by Plaintiff as Plaintiff Bates 3134, which DFW had transcribed by a certified court reporter for this motion. (Aug. 25, 2020 Mtg Tr.; App. 201-08).

[3] Plaintiff's wife Kandice Miller was present in the room with Plaintiff for the phone call and can be heard on the recording. (Pl.'s Dep. at 234:22-25 and 235:1-12; App. 162).

and explained that DFW could not guarantee that he would always be assigned to work with a courteous CSO who would agree to do Plaintiff's job duties for him. (*Id.*).

### 3. *Plaintiff requests to be reassigned to accommodate his restrictions but does not apply for any available positions.*

Ultimately, after consideration of all the facts and circumstances, which included review of ASD operational objectives and CSO functions, department size, number of CSOs performing the job, costs, and safety considerations, DFW decided that it had to deny Plaintiff's request for an accommodation. (M. Young Decl. at ¶ 13; App. 043; *see also* Aug. 25, 2020 Mtg Tr. at 16:10-20; App. 205). Plaintiff acknowledged that his restrictions could not be accommodated in his current CSO position[4] and asked about being reassigned to another position within DFW Airport. (M. Young Decl. at ¶ 13; App. 043; *see also* Aug. 25, 2020 Mtg Tr. at 16:21-25; App. 205). Plaintiff was directed to DFW's online job portal to review open positions he may be qualified for. (M. Young Decl. at ¶ 13; App. 043; *see also* Aug. 25, 2020 Mtg Tr. at 23:10-12 and 23-25; App. 207). Importantly, at no point during the call did anyone promise or guarantee that Plaintiff would be reassigned to another position. (M. Young Decl. at ¶ 13; App. 043; C. Young Decl. at ¶ 5; App. 008). Further, DFW does not have a policy that contemplates reassignment for medical reasons. (M. Young Decl. at ¶ 13; App. 043).

It should be noted that Plaintiff had, on multiple occasions, applied for other positions within DFW and thus was aware of the process DFW used for reassignment. (C. Young Decl. ¶ 6; App. 008). On August, 26, 2020, Plaintiff contacted Mark Young regarding two positions he believed he was qualified for and to which he wished to be reassigned. (M. Young Decl. at ¶ 14 and Ex. 19; App. 043 and 087-89). Mark Young advised Plaintiff to apply for the positions

---

[4] Contrary to his acknowledgment during the call, Plaintiff later contends that he was able to perform the essential functions of his job as CSO with the physical limitations. (M. Young Decl. at ¶ 15 and Ex. 20; App. 044 and 090-102). Notably, Plaintiff did not mention this during the interactive meeting.

**DEFENDANT'S BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**          **8**

"through the normal process," which Plaintiff did not do. (*Id*.; Pl's Dep. 225:24-25 and 226:1-4; App. 159-160). When Plaintiff continued to ask Mark Young about applying for open positions, Mark Young directed Plaintiff to Carl Young in Human Resources[5] regarding open positions at DFW Airport. (M. Young Decl. at ¶ 14 and Ex. 19; App. 043 and 087). On multiple occasions, Carl Young also directed Plaintiff to DFW's online job portal. (C. Young Decl. at ¶ 6 and Exs. 3 and 4; App. 008, 017-18). Despite being continually advised to apply through DFW's online job portal for open positions for which he was qualified in order to be considered for reassignment, and despite being familiar with DFW's process to apply for reassignment, Plaintiff did not submit applications for any jobs between August 25, 2020 and his administrative termination on December 11, 2020. (Pl's Dep. 225:24-25 and 226:1-4; App. 159-160).

### G. Plaintiff is Administratively Terminated for Exhausting the Maximum Amount of Short-Term Disability Leave Allowed Under DFW Policy.

On December 11, 2020, Plaintiff was administratively terminated for exhausting the maximum amount of short-term disability allowed within a 12-month period under DFW policy. (M. Young Decl. at ¶ 16 and Ex. 14; App. 044 and 066). Importantly, Plaintiff does not dispute that he accrued the maximum amount of short-term disability leave available under DFW policy. (Pl.'s Dep. at 157:21-23; App. 142).

---

[5] Plaintiff believes that DFW was somehow hiding open positions from him. However, that is not the case. DFW authorizes a certain number of positions each year and assumes a vacancy percentage rate when drafting the year's budget. (C. Puthoff Dep. 33:10-25 and 34:1-2; App. 185). Although Plaintiff may believe there were certain vacant budgeted positions he could have been qualified for, such positions must also have had a request to fill in order to be posted and available for applications rather than part of the assumed vacancy percentage. (*Id*. at 36:12-18; App. 185). Further, as Plaintiff was requesting reassignment, DFW was actively reducing staffing numbers due to the downturn in business caused by the COVID-19 pandemic. (*Id*. at 34:23-25 and 35:1-4; App. 185).

## IV.    ARGUMENT AND AUTHORITIES

### A.  Summary Judgment Standard.

Summary judgment is proper when there is no genuine dispute of material fact. Fed. R. Civ. P. 56(a). "The moving party bears the initial burden of identifying those portions of the pleadings and discovery in the record that it believes demonstrate the absence of a genuine issue of material fact, but is not required to negate elements of the nonmoving party's case." *Lynch Prop., Inc. v. Potomac Ins. Co. of Ill.,* 140 F.3d 622, 625 (5th Cir. 1998). If the non-moving party fails to offer proof concerning an essential element of its case, all other facts are immaterial and no genuine issue of fact exists. *Adams v. Travelers Indem. Co. of Conn*., 465 F.3d 156, 164 (5th Cir. 2006).

### B.  DFW is entitled to summary judgment on Plaintiff's disability discrimination claim.

The ADA prohibits employers from discriminating against qualified individuals on the basis of disability. 42 U.S.C. § 12112. In ADA discriminatory-termination actions, an employee may: (1) present direct evidence of discrimination because of a disability; or (2) rely on circumstantial evidence and proceed under the burden-shifting analysis set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *EEOC v. LHC Grp., Inc.*, 773 F.3d 688, 694 (5th Cir. 2014). Plaintiff has no direct evidence of discrimination because of a disability. Therefore, Plaintiff's case should be analyzed under the *McDonnell Douglas* burden-shifting framework. *Id.* Under the *McDonnell Douglas* analysis, Plaintiff bears the initial burden of establishing a *prima facie* case of discrimination. *See LHC Grp.,*773 F.3d at 694 (citing *EEOC v. Chevron Phillips Chem. Co., LP*, 570 F.3d 606, 615 (5th Cir. 2009)). If he is successful, the burden then shifts to DFW to articulate a legitimate, nondiscriminatory reason for terminating Plaintiff. *See id.* Finally, the burden shifts back to Plaintiff to show that DFW's proffered reason is pretextual. *See id*.

To establish a *prima facie* case of discrimination, Plaintiff "must prove (1) that he has a disability; (2) that he was qualified for the job; [and] (3) that he was subject to an adverse employment action on account of his disability." *Id.* at 695 (alteration in original) (quoting *Zenor v. El Paso Healthcare Sys., Ltd.*, 176 F.3d 847, 853 (5th Cir. 1999)). Here, Plaintiff alleges DFW discriminated against him by: (i) denying his request for a reasonable accommodation; (ii) refusing to reassign Plaintiff to positions he applied for between August and November 2020; and (iii) terminating his employment. (Pl.'s Compl. at ¶¶ 24-25; Doc. 1). As set forth below, DFW is entitled to summary judgment on Plaintiff's disability discrimination claim because Plaintiff cannot satisfy his *prima facie* case as to elements 2 and 3.

### 1. Plaintiff's discrimination claim fails as a matter of law because he is not a qualified individual.

Under the ADA, the term "qualified individual with a disability" means an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires. 42 U.S.C. § 12111. Thus:

> [w]hile the ADA focuses on eradicating barriers, the ADA does not relieve a disabled employee or applicant from the obligation to perform the essential functions of the job. To the contrary, the ADA is intended to enable disabled persons to compete in the work-place based on the same performance standards and requirements that employers expect of persons who are not disabled.

29 C.F.R. § 1630. Therefore, to be considered a qualified individual, Plaintiff must show that: (1) he can perform the essential functions of the job despite his disability; or (2) if he is unable to perform the essential functions of the job, that a reasonable accommodation by the employer would enable him to perform those functions. *LHC Grp., Inc.*, 773 F.3d at 697 (5th Cir. 2014).

#### a. Plaintiff's request for accommodation based on his physical limitations would not have allowed him to perform the essential functions of the CSO position.

Plaintiff now contends (which he did not during the meeting on August 25) that he could perform the essential functions of the CSO position with the physical limitations provided in his

request for a reasonable accommodation. Plaintiff's argument, which he came up with after his request for accommodation was denied, assumes certain duties are marginal, rather than essential, functions of the CSO position. However, Plaintiff is mistaken and, even with the accommodations he requested, he would not have been able to perform the essential functions of the CSO position.

A function is "essential" if it bears "more than a marginal relationship" to the employee's job. *Chandler v. City of Dall.*, 2 F.3d 1385, 1393 (5th Cir. 1993), holding modified on other grounds as discussed in *Kapche v. City of San Antonio*, 304 F.3d 493 (5th Cir. 2002) (per curiam). When considering whether a function is essential, courts owe deference to an employer's position description: "consideration shall be given to the employer's judgment as to what functions of a job are essential, and if an employer has prepared a written description before advertising or interviewing applicants for the job, this description shall be considered evidence of the essential functions of the job." 42 U.S.C. § 12111(8). "The inquiry into whether a particular function is essential initially focuses on whether the employer actually requires employees in the position to perform the functions that the employer asserts are essential." *LHC Grp., Inc.*, 773 F.3d at 698 (citing 29 C.F.R. § 1630.2(n)).

Here, it is undisputed that DFW has a written job description for the CSO position. DFW asserts that the duties, responsibilities, and efforts listed in the CSO job description are essential functions of the position as DFW expects all CSOs to be able to perform all of the requirements of any post to which they may be assigned.  (A. Baucham Decl. at ¶ 3; App. 002).  Indeed, Plaintiff does not dispute that the duties listed in the job description are the essential functions of the CSO position.

> Q:      And, Mr. King, are you an expert on what essential functions
>           of the job are?

A:    If it's not listed on the job description, it's not an essential function. So it's not very difficult to ascertain what's an essential function.

Q:    So everything listed on the job description would be an essential function.

A:    Exactly.

(Pl.'s Dep. at 158:24-25 and 159:1-6; App. 143). Plaintiff also acknowledged that he could be assigned to any post and he understood that "you had to come in every day and expect to be at any one of those spots." (*Id*. at 93:17-25 and 94:1; App. 126-127). Plaintiff further confirmed that he had performed, and all CSOs were expected to perform, the following essential functions.

- Inspected individuals and vehicles entering through the Air Operations Area gates. (*Id*. at 98:21-25, 99:1-4, and 104:20-23; App. 128-29).
- Perform security patrols on foot of the terminals, Skylink station, baggage claim, and curbside areas. (*Id*. at 106:17-25, 107:1-3, 108:1-17, 118:14-25, 119:1-10, 122:21-25, 123:1, 123:13-15, and 129:10-14; App. 130, 133-35).
- Performing perimeter and roving security vehicle patrols. (*Id*. at 123:16-25, 124:1-9, 126:21-25, and 127:1-4; App. 134-35).
- Verifying individuals entering through the employee portals and inspecting their personal belongings. (*Id*. at 109:18-25, 110:1-6, and 114:20-22; App. 130-32).
- Climbing into, out of, and searching under vehicles. (*Id*. at 135:9-21; App. 137).
- Working in awkward positions. (*Id*. at 136:7-13; App. 137).
- Driving to locations on DFW Airport property. (*Id*. at 123:16-25, 124:1-9, 126:21-25, and 127:1-4; App. 134-35).
- Sitting for extended periods of time (*Id*. at 138:22-25; App. 138).
- Walking for extended periods of time (*Id*. at 139:1-4; App. 138).

Thus, the duties, responsibilities, and functions listed in the CSO job description, including the foregoing, are essential functions. With the physical limitations provided in his request for reasonable accommodation, Plaintiff was unable to perform the essential functions of the CSO position.

> b. *Plaintiff's request for reassignment fails because he cannot identify any positions that were available and for which he was qualified.*

Plaintiff contends that DFW should and could have accommodated him by reassigning him "to any of the positions for which he applied for in August, September, and November 2020." (Pl.'s Compl. at ¶ 24). It is well established that, in order for a request for reassignment to be a reasonable accommodation, "a position must first exist and be vacant." *Burch v. City of Nacogdoches*, 174 F.3d 615, 620 (5th Cir. 1999) (quoting *Foreman v. Babcock & Wilcox Co.*, 117 F.3d 800, 810 (5th Cir. 1997)). "[P]laintiff bears the burden of proving that an available position exists that he was qualified for and could, with reasonable accommodations, perform." *Jenkins v. Cleco Power, LLC*, 487 F.3d 309, 315 (5th Cir. 2007).

Plaintiff cannot identify any position that: (1) was actually open and available between August and November 2020; (2) for which he was qualified; and (3) for which he could perform the essential functions. Plaintiff contends that he applied for 41 jobs between August, September, and November 2020. (Pl.'s Compl. at ¶ 20). First, it is undisputed that Plaintiff did not apply for any positions through DFW's online job portal between August and November 2020, despite being aware of the process and being advised to do so in order to pursue reassignment. (Pl.'s Dep. at 157:8-11, 225:24-25, and 226:1-4; App. 159; *see also* Pl.'s Job Application Portal Screenshots; App. 213-215). Instead, Plaintiff contends he applied for the 41 positions by emailing Mark Young and Carl Young because that is what he was supposedly instructed to do during the August 25, 2020 interactive meeting in order to pursue reassignment. (Pl.'s Dep. at 157:1-11; App. 142). Plaintiff claims this now despite being aware of the process DFW had in place for employees to apply for reassignment, despite being told on multiple occasions to apply for positions through the online portal, and despite the fact that the recording of the meeting he made does not instruct him to apply for jobs for reassignment by sending an email to either Mark Young or Carl Young.

In his deposition, Plaintiff admitted that he: (1) did not obtain copies of most of the job descriptions for the identified positions; and (2) is assuming he is qualified and can perform the essential functions of the job based on his interpretation of the job title and his general lay knowledge about what each of the positions likely required:

1. Tactical Telecommunicator (*Id*. at 165:1-4; App. 144);
2. Parking Guest Contract Supervisor (*Id*. at 168:10-19; App. 145);
3. Concessions Compliance Analyst (*Id*. at 170:18-21; App. 146);
4. Access DFW Trusted Agent (*Id*. at 170:25 and 171:1-2; App. 146);
5. Business Specialist (*Id*. at 174:1-19; App. 147);
6. Develop & Leasing Administrator (*Id*. at 174:20-25 and 175:1-16; App. 147);
7. Communications and Marketing Specialist (*Id*. at 175:19-25 and 176:1-13; App. 147);
8. Multimedia Coordinator (*Id*. at 176:16-21; App. 147);
9. Customer Programs Trainer (*Id*. at 177:17-25 and 178:1-23; App. 148);
10. Market Research Analyst (*Id*. at 179:1-8; App. 148);
11. Survey Technician (*Id*. at 179:11-23 and 180:1-5; App. 148);
12. Construction Inspector (*Id*. at 180:6-16; App. 148);
13. Plans Examiner/Inspector (*Id*. at 180:19-25 and 181:1-2; 148);
14. Quality Control Technician (*Id*. at 181:5-20; App. 148);
15. Systems Performance Analyst (*Id*. at 181: 23-25 and 182:1-18; App. 148-49);
16. Automotive Technician (*Id*. at 182:21-25 and 183:1-3; App. 149);
17. Lead Automotive Technician (*Id*. at 183:6-14; App. 149);
18. Radio and Mobile Electrician System Technician (*Id*. at 183:17-24; App. 149);
19. Electrician II (*Id*. at 184:2-16; App. 149);
20. Signs & Marketing Technician (*Id*. at 185:7-15; App. 149);
21. Electronics Technician (*Id*. at 185:18-25 and 186:1-9; App. 149-50);
22. Lead Electronics Technician (*Id*. at 186:12-18; App. 150);
23. Environmental Analyst (*Id*. at 186:21-25 and 187:1-4; App. 150);
24. Waste/Recycling Technician (*Id*. at 187:11-25; App. 150);
25. Talent Acquisition Specialist (*Id*. at 188:5-13; App. 150);
26. AOC Communications Specialist (*Id*. at 188:16-25 and 189:1-11; App. 150);
27. Transportation Business Specialist (*Id*. at 192:13-19; App. 151);
28. Contract Services Quality Agent (*Id*. at 192:22-25 and 193:1-5; App. 151);
29. Contract Administrator (*Id*. at 193:8-13: App. 151);
30. Civilian Detention Officer (*Id*. at 193:16-23; App. 151); and
31. Research & Analytics Specialist and Risk Analyst (*Id*. at 194:12-21; App. 152).

Further, Plaintiff agrees that he did not actually inform Carl Young that he was asking to be considered for the specific positions identified in his Complaint and to which he now claims DFW failed to reassign him.  Instead, he sent an email to Carl Young demanding that Mr. Young submit his "resume to all ST3, and ST4 positions, and MP4 so that [he] can be considered for those positions."  (C. Young Decl. at Ex. 3; App. 017).  Plaintiff also admits that he was not looking at the online job portal to identify the jobs that were open and available when he demanded that Carl Young submit his resume for these positions.  (Pl.'s Dep. at 160-161; App. 143).

Accordingly, Plaintiff did not show DFW and cannot now show the Court that most of the positions he supposedly applied to were open and available, that he was qualified for any of the positions, or that he could perform the essential functions of the positions, making his request for reassignment unreasonable. In addition, as set forth above, the accommodation Plaintiff requested based on his physical limitations was not reasonable. As such, Plaintiff was not a qualified individual and his disability discrimination claim fails as a matter of law.

### 2.  *Plaintiff cannot show a causal nexus between his disability and any alleged adverse employment action.*

To make his *prima facie* case, Plaintiff must show that he was subject to an adverse employment action on account of his disability. *LHC Grp.*, 773 F.3d at 695. Plaintiff must present evidence to establish a causal nexus between his termination and his disability. *Id.* Assuming arguendo that Plaintiff can show he was a qualified individual as to meet the second element of his disability discrimination claim, Plaintiff's claim still fails because he cannot show that his termination or DWF's alleged refusal to consider his applications for reassignment was based on such disability.

   *a. Plaintiff cannot show that DFW's alleged refusal to reassigning him was on account of his disability.*

Plaintiff alleges DFW refused to reassign him to any of the positions he applied for in August, September, or November 2020 because of his disability. (Pl.'s Compl. at ¶ 24.). To support this claim, Plaintiff relies on DFW's knowledge of Plaintiff's "difficulties in performing the Civilian Security Officer position" and an assumption that there were "desk jobs" which DFW deliberately withheld from him. (*Id.*). Plaintiff is mistaken. First, it is undisputed that Plaintiff did not apply for any "desk jobs" through DFW's online job portal during the identified time period. Plaintiff was aware of the process to apply for reassignment based on prior history, and he was also advised on multiple occasions to apply through the online job portal to be considered for reassignment.   Because he did not submit any applications for reassignment, Plaintiff cannot show that DFW refused to reassign him because of his disability rather than the fact that he did not apply. Second, even if Plaintiff had submitted any applications, he has no evidence that there were any available "desk jobs" that he was qualified for and could have filled without a reasonable accommodation, as alleged. DFW did not reassign Plaintiff because he did not apply for any positions for reassignment, not because of his disability.[6]

   *b. Plaintiff cannot show that his termination was on account of his disability.*

Plaintiff alleges that DFW terminated him because of his disability in December 2020. (Pl.'s Compl. at ¶ 24.). Plaintiff contends that DFW deliberately withheld reassignment in order to exhaust Plaintiff's short-term disability leave so that "he would have to be fired." (*Id.*). Plaintiff's argument is misguided.

---

[6] Even assuming that the September 12 email to Carl Young constitutes an application for the Terminal Experience Manager position, Plaintiff was not qualified for that role based on his resume, and there were other candidates already being considered who did meet the qualifications.  (C. Young Decl. at ¶ 6; App. 008).

Pursuant to its Short-Term Disability Policy, DFW administratively terminated Plaintiff for using more than 180 days of leave. Matrix is responsible for reviewing and making decisions on DFW's employees' requests for short-term disability leave. Whether an employee applies for and receives short-term disability leave is outside the control of DFW.  In the instant case, Plaintiff used 65 days of short-term disability leave during his First STD Leave. He then had 115 days of available leave remaining. Matrix initially denied Plaintiff's second application for short-term disability leave, but Plaintiff successfully appealed that denial. As a result, Matrix retroactively granted Plaintiff's second application for short-term disability leave. Although aware that Plaintiff had appealed Matrix's initial denial, DFW had no knowledge of the status of the appeal or the likely outcome until November 2020.  (M. Young Decl. at ¶ 9; App. 041-42). In fact, DFW had limited knowledge of the reason Plaintiff's second application for short-term disability leave was denied by Matrix in the first place. (M. Young Decl. at ¶ 9 and Exs. 9 and 10; App. 041-42 and 159-60). DFW did not withhold reassignment while Plaintiff's appeal was pending. DFW continued to correspond with Plaintiff concerning his request for reassignment, directing him to apply for open positions via the online job portal. Further, even after being informed of Matrix's decision to overturn its denial and the fact that Plaintiff would receive leave retroactively, DFW continued to correspond with Plaintiff about his request for reassignment, advising him to apply for open positions through the online job portal, which he did not do.

Plaintiff was administratively terminated for exhausting the maximum amount of leave available to him with his second application for short-term disability. Whether Plaintiff received short-term disability was entirely outside of DFW's control as Matrix was responsible for the review and approval of such leave. In fact, Plaintiff's job status was unchanged after he decided to appeal Matrix's denial, which ultimately resulted in him receiving the remaining 115 days of

leave. (*Id*. at ¶ 9; App. 041-42). Therefore, there is no genuine issue for trial as to whether Plaintiff's disability "actually play[ed] a role in [DFW's] decision making process and [had] a determinative influence on the outcome." *Pinkerton v. Spellings*, 529 F.3d 513, 519 (5th Cir. 2008). Plaintiff cannot make his *prima facie* case for disability discrimination, and summary judgment should be granted for DFW.

### 3. Plaintiff did not suffer an adverse employment action by DFW allegedly refusing to reassign him because he did not apply for any positions in order to be considered for reassignment.

Even if Plaintiff were a qualified individual, Plaintiff cannot show Defendant's refusal to reassign him was an adverse employment action. "Adverse employment decisions are ultimate employment decisions such as hiring, granting leave, discharging, promoting, compensating, or demoting." *Thompson v. Microsoft Corp.*, 2 F.4th 460, 470 (5th Cir. 2021) An employment decision that "does not affect job duties, compensation, or benefits" is not an adverse employment decision for purposes of stating a discrimination claim. *Pegram v. Honeywell, Inc.*, 361 F.3d 272, 282 (5th Cir. 2004).

Plaintiff's disability discrimination claim fails to the extent it is based on DFW's alleged refusal to reassign him because, as set forth above, Plaintiff did not properly apply for any position for reassignment.[7] DFW requires an application through the online job portal in order to be formally considered for a position, which Plaintiff was well aware of based on his prior applications for reassignment, and which he did not do in this situation. Without a proper application, Plaintiff did not interview and was not even considered for any of the positions to

---

[7] To the extent that Plaintiff is claiming that he applied for the Terminal Experience Manager position, Carl Young did send King's resume to the DFW Recruiter assigned to screen candidates for that role. (C. Young Decl. at ¶ 6; App. 008). Mr. Young did not share with the Recruiter any information about Plaintiff's disability or request for accommodation. (*Id*.). Plaintiff was not qualified for that role based on his resume, and there were other candidates already being considered who did meet the qualifications. (*Id*.). Regardless, Plaintiff did not formally apply for that role via the online job portal.

which he allegedly applied.[8] As such, Plaintiff's alleged applications for reassignment do not constitute an ultimate employment decision because such requests could not have altered his status as an employee already hired by DFW. *Cf. Burger v. Cent. Apartment Mgmt., Inc.*, 168 F.3d 875, 879 (5th Cir. 1999) (finding employee's request for a purely lateral transfer does not qualify as an ultimate employment decision because the transfer would not have altered his status as an employee already hired by his employer).

## C. DFW is Entitled to Summary Judgment on Plaintiff's Retaliation Claim.

Plaintiff alleges DFW retaliated against him for requesting a reasonable accommodation by administratively terminating him on December 11, 2020. (Pl.'s Compl. at ¶ 26). DFW is entitled to summary judgment on Plaintiff's retaliation claim because Plaintiff cannot satisfy his *prima facie* case of retaliation. Plaintiff cannot show a causal connection between his request for an accommodation and his administrative termination or DFW's alleged refusal to consider Plaintiff's applications for reassignment. Further, Plaintiff cannot establish that he suffered an adverse employment action by DFW allegedly refusing to consider his applications for reassignment.

### 1. Plaintiff cannot establish a causal connection between his request for accommodation and his administrative termination.

In order to establish a *prima facie* case of retaliation under the ADA, Plaintiff must show that: "(1) he participated in an activity protected under the statute; (2) his employer took an adverse employment action against him; and (3) a causal connection exists between the protected activity

---

[8] DFW recognizes that some cases in the Fifth Circuit hold that an applicant need not apply through formal channels if there is other evidence showing that was not always required by the employer. Those cases are distinguishable from the case at bar for the reasons set forth in this Brief. In addition, there is no evidence in this case that DFW deviated from its hiring practices in situations not involving Plaintiff. *See Simon v. Honeywell, Inc.*, 642 F.2d 754, 755 n. 3 (5th Cir. 1981) ("[t]he fact that appellant may not have formally applied for the promotion . . . is not significant in light of the uncontradicted evidence that no formal application was necessary and that applicant was, in fact, considered for the promotions."); *Hernandez v. City of Corpus Christi*, 820 F. Supp. 2d 781, 797 (S.D. Tex. 2011) (rejecting argument that plaintiff did not seek promotion because he did not submit a formal application where no formal application was necessary and plaintiff was interviewed and considered for the position).

and the adverse action." *Seaman v. CSPH, Inc.*, 179 F.3d 297, 301 (5th Cir. 1999). To demonstrate a "causal connection" a plaintiff must demonstrate that the employer's decision "was based in part on knowledge of the employee's protected activity." *Lyons v. Katy Indep. Sch. Dist.*, 964 F.3d 298, 305 (5th Cir. 2020) (citations omitted). "Close timing between an employee's protected activity and an adverse action against him may provide the 'causal connection' required to make out a prima facie case of retaliation." *Swanson v. Gen. Servs. Admin.*, 110 F.3d 1180, 1188 (5th Cir. 1997). The Fifth Circuit has found a few months separation may support an inference of a causal nexus. *See, e.g., Evans v. City of Houston*, 246 F.3d 344, 354 (5th Cir. 2001) (finding a period of four months sufficient to satisfy the causal requirement); *Raggs v. Miss. Power & Light Co.*, 278 F.3d 463, 471-72 (5th Cir. 2002) (finding a period of five months, standing alone, could not support an inference of a causal connection).

Plaintiff claims he was terminated in retaliation for requesting a reasonable accommodation. However, it was Plaintiff's request for short-term disability and then his appeal of his second application for short-term disability leave that ultimately resulted in him exhausting the maximum amount of short-term disability leave available under DFW policy and, ultimately, his administrative termination. Plaintiff submitted his request for accommodation on July 31, 2020. On September 18, 2020, after Plaintiff's request for accommodation was denied on August 25, and while he was pursuing reassignment within DFW, Plaintiff appealed Matrix's denial of his application for short-term disability leave. The appeal is handled within Matrix separately from Plaintiff's request for accommodation. The claim is even reviewed by independent peer review, which accounts for some of the length of time it takes for the appeal when under review. DFW has no control or influence over the review or determination of employee applications for short-term disability leave. Further, Plaintiff's request for accommodation on July 31, 2020 and

administrative termination on December 11, 2020 are far enough apart in timing that the only explanation for Plaintiff's termination is his exhaustion of leave, not his request for accommodation.

### 2. Plaintiff cannot show a causal connection between his request for accommodation and DFW's alleged refusal to reassign him.

Plaintiff contends DFW retaliated against him for requesting a reasonable accommodation by refusing to reassign him to any of the positions to which he allegedly applied. (Pl.'s Compl at ¶ 26). However, as explained above, Plaintiff did not properly apply through DFW's online job portal for any positions to be considered for reassignment. Even after being directed to apply through the online job portal numerous times, and despite Plaintiff understanding how the application process worked, Plaintiff failed to apply through the normal process. As such Plaintiff cannot establish that it was his request for accommodation, rather than the lack of proper applications or lack of qualification for such positions,[9] that caused DFW's alleged refusal to reassign him.

### 3. Plaintiff cannot show that he suffered an adverse employment action by DFW allegedly refusing to reassign him.

Nor can Plaintiff establish that he suffered an adverse employment action as he cannot show that he submitted any applications to DFW which it refused to consider. As set forth above, Plaintiff failed to apply for any positions to be considered for reassignment through DFW's online job portal despite understanding the process for reassignment and despite being instructed to do so. Without a formal application, DFW had no application to refuse and Plaintiff could not have suffered an adverse employment action.  *Cf. Burger*, 168 F.3d at 879.

---

[9] *See* fn. 4, supra.

**D. Even if Plaintiff could make his *prima facie* case for discrimination and retaliation, DFW is entitled to summary judgment because it has articulated a legitimate nondiscriminatory, nonretaliatory reason for Plaintiff's termination.**

Even if Plaintiff could establish a *prima facie* case of discrimination or retaliation, which he cannot, DFW has articulated a legitimate, non-discriminatory reason for terminating Plaintiff's employment. Plaintiff was administratively terminated because he exhausted the maximum amount of short-term disability leave available under DFW policy. Courts in this circuit have repeatedly held that the neutral application of a reasonable leave policy is a legitimate nondiscriminatory nonretaliatory reason for termination. *See McIntyre v. San Antonio Water Sys.*, No. 16-CV-399 (RCL), 2017 WL 1532608, at *9 (W.D. Tex. Apr. 26, 2017)) (applying maximum leave duration policy); *Tirumalasetti v. Caremark RX, Inc.*, No. 3:05-CV-1847-B, 2007 WL 9712193, at *6 (N.D. Tex. Feb. 20, 2007) (applying maximum leave duration policy); *Custard v. Alief Indep. Sch. Dist.*, No. CIV.A. H-04-1882, 2005 WL 1960058, at *5 (S.D. Tex. Aug. 16, 2005) (applying maximum allotted leave policy of 180 days).

Plaintiff must now produce substantial evidence indicating that the proffered legitimate nondiscriminatory and nonretaliatory reason is a pretext for discrimination in order to survive summary judgment. *Laxton v. Gap Inc.*, 333 F.3d 572, 578 (5th Cir. 2003). Plaintiff cannot produce any evidence to rebut DFW's proffered reasons or to show that the reason is untrue and a pretext for discrimination. Indeed, Plaintiff admits that he exhausted the maximum amount of short-term disability leave available under DFW policy. As Plaintiff cannot produce any evidence that DFW's proffered reason is pretext, DFW's motion for summary judgment should be granted.

## V.   CONCLUSION

Plaintiff's claims should be summarily dismissed as a matter of law. Plaintiff's disability discrimination claim fails because Plaintiff cannot establish that he was a qualified individual under the ADA. Even if he were qualified, DFW's alleged refusal to reassign him does not

constitute an adverse employment action. Further, Plaintiff's retaliation claim fails because Plaintiff did not properly apply for any position in order to be considered for reassignment and Plaintiff cannot establish a causal connection between his request for accommodation and his administrative termination or DFW's alleged refusal to reassign him. Finally, Plaintiff cannot carry his ultimate burden of proof by showing DFW's legitimate, nondiscriminatory and nonretaliatory reason for terminating Plaintiff, that he exhausted the maximum amount of short-term disability leave under DFW policy, is pretext. Therefore, summary judgment on all of Plaintiff's claims is proper.

## VI.    PRAYER

For the reasons given above, DFW respectfully requests that the Court grant its Motion for Summary Judgment, that Plaintiff's lawsuit be dismissed in its entirety, that the Court award DFW its costs, and that DFW be given all other relief to which it is justly entitled.

Respectfully submitted,

By: */s/ Caroline C. Harrison*

Caroline C. Harrison
State Bar No. 24046034
charrison@phamharrison.com
Spencer M. Mainka
State Bar No. 24116707
smainka@phamharrison.com
PHAM HARRISON, LLP
505 Pecan Street, Suite 200
Fort Worth, Texas 76102
(817) 632-6300
(817) 632-6313 – Fax

**ATTORNEYS FOR DEFENDANT**

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby acknowledges that a true and correct copy of the above-mentioned document was served in accordance with the Federal Rules of Civil Procedure on this the 9th day of June, 2023 on counsel for Plaintiff as follows:

Wes Dauphinot
Law Offices of Wes Dauphinot, P.C.
900 West Abram
Arlington, Texas 76103
wes@dauphinotlawfirm.com

Hani F. Kobty
Kobty Law Firm
900 West Abram
Arlington, Texas 76103
hani@kotbylawfirm.com

**ATTORNEYS FOR PLAINTIFF**

      */s/ Caroline C. Harrison*
      Caroline C. Harrison