**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | | |
|---|---|---|
| NATHANIEL KING | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:22-CV-929-P |
| | § | |
| | § | |
| DALLAS-FORT WORTH | § | |
| INTERNATIONAL AIRPORT BOARD, | § | |
| | § | |
| Defendant. | § | |

**DEFENDANT DALLAS-FORT WORTH**
**INTERNATIONAL AIRPORT BOARD'S RESPONSE TO PLAINTIFF'S**
**MOTION FOR PARTIAL SUMMARY JUDGMENT AND BRIEF IN SUPPORT**

**TABLE OF CONTENTS**

I.  INTRODUCTION ....................................................................................................1

II.  RESPONSE SUMMARY ........................................................................................2

III.  STATEMENT OF FACTS .......................................................................................3

    A.  Plaintiff's Employment with DFW as a Civilian Security Officer. ...............................3

    B.  Plaintiff's First Short-Term Disability Leave of Absence (November 9, 2019 to January 13, 2020)..............................................................................4

    C.  Plaintiff is Temporarily Assigned to the E Dock on Modified Duty. ............................5

    D.  Plaintiff's Modified Duty Assignment Ends....................................................................6

    E.  Plaintiff's Second Short-Term Disability Leave of Absence (April 25, 2020 to August 18, 2020)..........................................................................................6

    F.  Plaintiff Requests a Reasonable Accommodation. ..........................................................7

        1.  Plaintiff requests an accommodation based on physical limitations. .................7

        2.  Plaintiff's request cannot be accommodated in the CSO position. .....................8

        3.  Plaintiff requests to be reassigned to accommodate his restrictions but does not apply for any available positions. ..........................................................9

G. Plaintiff is Administratively Terminated for Exhausting the Maximum Amount of Short-Term Disability Leave Allowed Under DFW Policy. .........................................11

IV.   ARGUMENTS AND AUTHORITIES ..................................................................11

A. Summary Judgment Standard. .......................................................................................11

A. To the Extent Plaintiff's Allegations Include Claims Other Than What is Included In his Charge or Complaint, Plaintiff has Failed to State a Claim Upon Which Relief May Granted. ...........................................................................................................12

B. Defendant Taking Reasonable Care to Promulgate Policies Against Retaliation Is an Appropriate Affirmative Defense.....................................................................................13

C. A Genuine Issue of Material Fact Exists as to Defendant's Mitigation of Damages Defense.........................................................................................................................14

1.   The evidence referenced by Plaintiff does not establish that Plaintiff mitigated his damages. ...........................................................................................................15

2.   A genuine issue of material fact exists as to Plaintiff's efforts to obtain work.16

D. Plaintiff's Request for Accommodation was Not Reasonable and Would Pose an Undue Hardship on Defendant........................................................................................17

1.   Plaintiff's requested accommodation was unreasonable because it would have required DFW to eliminate or reallocate essential functions of the CSO position....17

2.   Because Plaintiff not met his burden to show a plausible accommodation existed, the Court should not reach Defendant's undue burden defense. Even so, Plaintiff's requested accommodation placed an undue burden on Defendant. .........19

E. Plaintiff was Not Regarded as Having an Impairment or Disability by Defendant or Defendant's Employees. ................................................................................................20

F. A Genuine Issue of Material Fact Exists as To Whether Plaintiff has a Disability as Defined by the ADA.......................................................................................................21

G. Plaintiff's Claims are Barred in Whole or in Part to the Extent he Failed to Exhaust Administrative Remedies, They Exceed the Scope of the Allegations Contained in His Charge, or They Are Outside the Applicable Limitations Period. .............................22

H. Defendant is Entitled to Statutory Limits on Punitive Damages. ...............................24

I.   **A Genuine Issue of Material Facts Exists as to Whether Plaintiff's Allegations are Frivolous, Groundless, or Unreasonable as to Entitle Defendant to its Attorney's Fees.** 24

V.   **CONCLUSION** ..................................................................................................**25**

## TABLE OF AUTHORITIES

**Cases**

*Amato v. St. Luke's Episcopal Hosp.*,
987 F. Supp. 523, 531 (S.D. Tex. 1997)........................................................................19

*Antoine v. First Student, Inc.*,
713 F.3d 824, 839 (5th Cir. 2013) ................................................................................19

*Bradley v. Univ. of Tex. M.D. Anderson Cancer Ctr.*,
3 F.3d 922, 925 (5th Cir.1993) .....................................................................................18

*Bruff v. N. Mississippi Health Servs., Inc.*,
244 F.3d 495, 501 (5th Cir. 2001) ................................................................................20

*Burlington Indus., Inc. v. Ellerth*,
524 U.S. 742, 752 (1998) ..............................................................................................14

*Casiano v. AT & T Corp.*,
213 F.3d 278, 284 (5th Cir. 2000)................................................................................14

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986) ......................................................................................................11

*Chandler v. City of Dall.*,
2 F.3d 1385, 1393 (5th Cir. 1993) ................................................................................18

*Christiansburg Garment Co. v. EEOC*,
434 U.S. 412, 421 (1978) ..............................................................................................24

*Dutcher v. Ingalls Shipbuilding*,
53 F.3d 723, 726 (5th Cir. 1995)...................................................................................22

*E.E.O.C. v. Chevron Phillips Chem. Co., LP*,
570 F.3d 606 (5th Cir. 2009).........................................................................................22

*E.E.O.C v. Exxon Shipping Co.*,
745 F.2d 967, 977 (5th Cir. 1984) ................................................................................16

*EEOC v. LHC Grp., Inc.*,
773 F.3d 688, 697 (5th Cir. 2014) ........................................................................ 17-18

*Faragher v. City of Boca Raton*,
524 U.S. 775, 787–88 (1998) .................................................................................... 14

*Ford Motor Co. v. E.E.O.C.*,
458 U.S. 219, 231-32 (1982) .................................................................................... 16

*Fulbright v. Union Pac. R.R. Co.*,
No. 3:20-CV-2392-BK, 2022 WL 975603, at *7 (N.D. Tex. Mar. 31, 2022) ............... 16

*Jackson v. Host Int'l, Inc.*,
426 F. App'x 215, 222 (5th Cir. 2011) (per curiam) .................................................... 15
*Jones v. Kerrville State Hosp.*,
142 F.3d 263, 265 (5th Cir. 1998) ............................................................................. 19

*Kapche v. City of San Antonio*,
304 F.3d 493 (5th Cir. 2002) (per curiam) ................................................................. 18

*Mejia v. Ayala*,
No. 3:21-CV-0587-D, 2022 WL 3702027, at *2 (N.D. Tex. Aug. 26, 2022) ............... 15

*Migis v. Pearle Vision, Inc.*,
135 F.3d 1041, 1045 (5th Cir. 1998) .......................................................................... 14

*Morris v. Covan World Wide Moving, Inc.*,
144 F.3d 377, 380 (5th Cir. 1998) ............................................................................. 11

*Nicholson v. Securitas Sec. Servs., USA, Inc.*,
No. 4:14-CV-172-O, 2016 WL 7669518, at *6 (N.D. Tex. Dec. 29, 2016) ................. 15

*Riel v. Electronic Data Sys. Corp.*,
99 F.3d 678, 683 (5th Cir. 1996) ............................................................................... 19

*Sellers v. Delgado Coll.*,
902 F.2d 1189, 1193 (5th Cir. 1990) ...................................................................... 14-15

*Sparks v. Griffin*,
460 F.2d 433, 443 (5th Cir. 1972) ............................................................................. 15

*Thomas v. Tex. Dep't of Criminal Justice*,
220 F.3d 389, 395 (5th Cir. 2000) ............................................................................. 23

*Trans World Airlines, Inc. v. Hardison*,

432 U.S. 63, 81 (1977) ..................................................................................................................20

*Weber v. Roadway Express*,
199 F.3d 270, 274 (5th Cir. 2000) ..............................................................................................20

*West v. Nabors Drilling USA, Inc.*,
330 F.3d 379, 393 (5th Cir. 2003) ..............................................................................................15

*Young v. City of Houston*,
906 F.2d 177, 179 (5th Cir. 1990) ..............................................................................................15

**Regulations**

29 C.F.R. § 1630.2

**Statutes**

42 U.S.C. § 1981a......................................................................................................................24

42 U.S.C. § 12102 ...............................................................................................................20-21

42 U.S.C. § 12111 ...............................................................................................................17-18

42 U.S.C. § 12205 ......................................................................................................................24

FED. R. CIV. P. 56 ......................................................................................................................11

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | | |
|---|---|---|
| **NATHANIEL KING** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. 4:22-CV-929-P** |
| | § | |
| | § | |
| **DALLAS-FORT WORTH** | § | |
| **INTERNATIONAL AIRPORT BOARD,** | § | |
| | § | |
| **Defendant.** | § | |

**DEFENDANT DALLAS-FORT WORTH
INTERNATIONAL AIRPORT BOARD'S RESPONSE TO PLAINTIFF'S
MOTION FOR PARTIAL SUMMARY JUDGMENT AND BRIEF IN SUPPORT**

TO THE HONORABLE COURT:

Dallas-Fort Worth International Airport Board ("DFW" or "Defendant"), Defendant in the above-referenced case, files this Response to Plaintiff's Motion for Partial Summary Judgment (Doc. 19-1) and asks the Court to deny same. In support, Defendant respectfully shows the Court as follows:

## I.        INTRODUCTION

The dispute in this case arises out of DFW's decision to administratively terminate Plaintiff Nathaniel King's ("Plaintiff") employment with DFW as a Civilian Security Officer. Plaintiff alleges that DFW violated the Americans with Disabilities Act and the ADA Amendments Act (collectively the "ADA") by: (1) discriminating against Plaintiff because of his disability in (a) denying his request for a reasonable accommodation, (b) refusing to reassign him, and (c) administratively terminating him; and (2) retaliating against Plaintiff for requesting a reasonable accommodation by (a) refusing to reassign him, and (b) administratively terminating him.

## II.      RESPONSE SUMMARY

Plaintiff does not seek summary judgment on any of his claims. Rather, Plaintiff seeks summary judgment on some, but not all, of Defendant's affirmative defenses. Specifically, Plaintiff's Motion for Partial Summary Judgment ("Motion") requests summary judgment on the following affirmative defenses:

1. Plaintiff fails to state a claim upon which relief may be granted. (Pl.'s Mot. Summ. J. at 11);

2. Defendant exercised reasonable care to prevent and promptly correct any acts alleged to constitute retaliation by promulgating policies against retaliation. These policies were distributed to all employees and at all times available. (*Id.* at 12);

3. Plaintiff could have, by reasonable effort, mitigated the damages alleged by securing similar employment that was readily available, but Plaintiff has totally failed to do so. Thus, Plaintiff's damages, if any, should be reduced by the amount, if any, that Plaintiff has actually failed to mitigate. (*Id.* at 13);

4. Defendant denies that Plaintiff requested a reasonable accommodation and that it failed to provide Plaintiff with a reasonable accommodation. Further, Plaintiff was not entitled to any reasonable accommodation. Pleading in the alternative, to the extent that Plaintiff does permissibly raise a viable claim with regard to reasonable accommodation, Defendant will show that Plaintiff's proposed reasonable accommodation was not reasonable and/or would pose an undue hardship on Defendant. Pleading further in the alternative, Defendant denies that reasonable accommodation was refused, and/or available. (*Id.*);

5. Plaintiff was not regarded as having an impairment or disability by Defendant or any of Defendant's employees. (*Id.* at 14);

6. Plaintiff did not have a disability as defined by the ADA. (*Id.*);

7. Plaintiff's claims are barred in whole or in part to the extent he failed to exhaust administrative remedies. (*Id.* at 15);

8. Plaintiff's claims are barred in whole or in part to the extent they exceed the scope of the allegations contained in a timely-filed Charge of Discrimination (*Id.*);

9. Plaintiff's claims are barred in whole or in part to the extent they are outside the applicable limitations period(s). (*Id.*);

10. Plaintiff's request for punitive damages is barred by the due process clauses of the United States Constitution and amendments thereto, and by the due process clause of the Texas Constitution (*Id.* at 16); and

11. Defendant alleges that Plaintiff's allegations are frivolous, groundless, or unreasonable thus entitling Defendant to an award of reasonable attorney's fees and expert witness fees. (*Id.*).

For the reasons set forth below, and in Defendant's Brief in Support of Motion for Summary Judgment (Doc. 21), Plaintiff's Motion should be denied.

### III.   STATEMENT OF FACTS

Nearly all of the facts in Plaintiff's Motion are unsupported by the evidence contained in his Summary Judgment Appendix. Further, Defendant has filed contemporaneously with this Response Objections to and a Motion to Strike Plaintiff's Summary Judgment Appendix ("Motion to Strike"). (Doc. 24). Out of an abundance of caution, DFW, therefore, recounts at length and provides support for all of the facts of this dispute below as set forth in its Brief in Support of Motion for Summary Judgment.

#### A.  Plaintiff's Employment with DFW as a Civilian Security Officer.

On February 8, 2016, Plaintiff was hired by DFW as a Civilian Security Officer ("CSO") in the Airport Security Division ("ASD"). (C. Young Decl. at ¶ 3; Def. Resp. App. 007). Plaintiff did not disclose any of his alleged disabilities at the time he was hired. (Pl.'s Ex. F; Pl.'s App. 19). CSOs are responsible for various security functions at DFW Airport. (A. Baucham Decl. at ¶ 3 and Ex. 1; Def. Resp. App. 002 and 004-06). CSOs are assigned to various posts around DFW Airport on a rotating schedule by shift. (*Id.* at ¶ 4; Def. Resp. App. 002).

On each shift, a CSO is assigned to one of more than 25 posts managed by ASD. (*Id.*). The number of active posts at any given time depends on the business needs of DFW Airport. (*Id.*). Likewise, the number of CSOs assigned to each post depends on the number of active posts, the duties required at each active post, and available CSOs on each shift. (*Id.*).

The various posts a CSO could be assigned to include inspecting vehicles and individuals entering through Air Operations Area gates, performing terminal security patrols by foot, performing perimeter vehicle patrols, and inspecting individuals entering through the employee portals and their personal belongings. (*Id.* at ¶ 5 and Ex. 1; Def. Resp. App. 002 and 004-06). CSOs are expected to be able to perform any of the following at any given time as the duties required at each post differ and may change at a moment's notice, as is the nature of a security role:

- Climbs into, out of, and search under vehicles;
- Works in awkward positions such as kneeling, stooping, or squatting;
- Drives to locations on DFW Airport property, including the Air Operations Area;
- Sits for extended periods of time; and
- Walks for extended periods of time.

(*Id.* at ¶ 6 and Ex. 1; Def. Resp. App. 002 and 004-006).

## B. Plaintiff's First Short-Term Disability Leave of Absence (November 9, 2019 to January 13, 2020).

During his employment with DFW, Plaintiff requested and received short-term disability leave on several occasions. (M. Young Decl. at ¶¶ 4-5 and 9-10; Def. Resp. App. 040-42). DFW policy allows for a maximum period of 180 calendar days (173 calendar days plus a seven-day waiting period) of short-term disability leave during a rolling 12-month period. (*Id.* at ¶ 3 and Ex. 1; Def. Resp. App. 040 and 045). As such, for purposes of this Response, DFW focuses only on the short-term disability leave taken by Plaintiff in his last year of employment with DFW.

On November 14, 2019, Plaintiff requested short-term disability leave through Matrix Absence Management, Inc. ("Matrix") to begin on November 9, 2019 ("First STD Leave"). (*Id.* at ¶ 4 and Ex. 2; Def. Resp. App. 040 and 049). DFW contracts with Matrix as its third-party administrator for review and decision on employee leaves of absence, including requests for short-term disability leave and requests for accommodations. (*Id.* at ¶ 2; Def. Resp. App. 039-40). On

January 13, 2020, Plaintiff returned to work from his First STD Leave with the following restrictions:

- Unable to stand greater than 20 minutes per hour;
- No repetitive bending, squatting, or stooping;
- Limit walking to less than one mile per work day; and
- Limit driving time to less than two hours per work day.

(*Id*. at ¶ 5 and Ex. 3; Def. Resp. App. 040 and 050). During his First STD Leave, Plaintiff used 65 days of short-term disability leave. (*Id*. at ¶ 5; Def. Resp. App. 040).

### C. Plaintiff is Temporarily Assigned to the E Dock on Modified Duty.

To meet his restrictions and return Plaintiff to work, he was temporarily assigned to a CSO post at the E Dock under DFW's Modified Duty Policy. (M. Young Decl. at ¶ 6 and Ex. 4; Def. Resp. App. 040 and 051). The E Dock is not a standard post through which CSOs rotate. (A. Baucham Decl. at ¶ 8; Def. Resp. App. 003). Rather, ASD assigns individuals on modified duty to work at the docks, including E Dock. (*Id*.). Plaintiff claims that his assignment to the E Dock was not recommended by his doctor or requested by him. (Pl.'s Mot. Summ. J at 5). However, this is inconsistent with the restrictions provided by Matrix. (*See* M. Young Decl. at ¶ 5 and Ex. 3; Def. Resp. App. 040 and 050). Plaintiff had requested to return to work but was unable to return to full duty capacity given his restrictions. (*Id*.). Based on his restrictions, DFW determined that the E Dock was the only place for Plaintiff to work with his restrictions. (C. Young Decl. at ¶ 4 and Ex. 1; Def. Resp. App. 007-08 and 010). Plaintiff does not dispute that his request to return to work with restrictions was granted. (Pl. Dep. 221:8-17; Def. Resp. App. 158). Notably, the duration of Plaintiff's restrictions was unknown when he returned in January 2020. (M. Young Decl. at Ex. 3; Def. Resp. App. 050).

On January 28, 2020, Plaintiff requested that he be moved from his position on the E Dock to an administrative role within ASD. (M. Young Decl. at ¶ 7 and Ex. 6; Def. Resp. App. 040-41

and 056). After determining his request was not due to any change to his restrictions (i.e., a medical reason), his request was denied. (*Id*.). Additionally, it should be noted that there was not an administrative position available, and operationally the E Dock assignment was the only space available. (*Id*. at ¶ 7 and Ex. 5; Def. Resp. App. 040-41 and 054).

### D. Plaintiff's Modified Duty Assignment Ends.

On April 1, 2020, Plaintiff informed DFW that he had seen his physician on March 18, 2020, his limitations had not changed, and his limitations were permanent. (M. Young Decl. at ¶ 8 and Exs. 7 and 3; Def. Resp. App. 041, 058, and 050; *see* Matrix Decl. Ex. 1; Def. Resp. App. 211). At this point, Plaintiff had been on a modified duty assignment for more than 60 days. (M. Young Decl. at ¶ 8; Def. Resp. App. 041). DFW policy provides that a modified duty assignment is temporary and may be extended or ended as determined by DFW. (*Id*. at Ex. 4; Def. Resp. App. 051). On April 20, 2020, after careful consideration, DFW informed Plaintiff that April 24, 2020, would be his last day on modified duty assignment because his restrictions had not changed and the duration of his restrictions remained unknown. (*Id*. at ¶ 8 and Ex. 8; Def. Resp. App. 041 and 059). Plaintiff was advised of his option to apply for short-term disability with Matrix. (*Id*.).

### E. Plaintiff's Second Short-Term Disability Leave of Absence (April 25, 2020 to August 18, 2020).

On April 20, 2020, Plaintiff submitted an application for short-term disability leave to Matrix, which he requested to begin on or about April 25, 2020. (M. Young Decl. at ¶ 9 and Ex. 9; Def. Resp. App. 041 and 060). On June 18, 2020, Matrix denied Plaintiff's application for short-term disability leave due to inadequate medical documentation. (*Id*.). On September 21, 2020, following the denial of his request for a reasonable accommodation and during his attempts to be

reassigned,[1] Plaintiff appealed Matrix's June 18 denial of his application for short-term disability leave. (*Id*. at ¶ 9 and Exs. 10 and 11; Def. Resp. App. 041, 061, and 062).

On November 4, 2020, Matrix reversed its decision to deny Plaintiff's application for short-term disability and retroactively granted Plaintiff short-term disability leave beginning April 25, 2020. (*Id*. at ¶ 9 and Ex. 12; Def. Resp. App. 042 and 064). Because he had already used 65 days of short-term disability leave during his First STD Leave, Plaintiff was approved for and received 115 days of short-term disability leave as a result of his successful appeal. (*Id*. at ¶ 9; Def. Resp. App. 042). The maximum leave allowed under DFW policy is 180 days. (*Id*. at Ex. 2; Def. Resp. App. 045). Accordingly, Plaintiff exhausted the maximum amount of short-term disability leave allowed on August 19, 2020. (*Id*. at ¶ 10 and Ex. 14; Def. Resp. App. 042 and 066). Because Plaintiff was in the appeal process, this fact was not established until Matrix ruled on his appeal (*Id*. at ¶¶ 9-10; Def. Resp. App. 041-42).

### F. Plaintiff Requests a Reasonable Accommodation.

#### 1. Plaintiff requests an accommodation based on physical limitations.

Following the end of his modified duty assignment, Plaintiff pursued a second short-term disability leave of absence, as set forth above. (M. Young Decl. at ¶ 9; Def. Resp. App. 041-42). About two months later, he also took steps to pursue a reasonable accommodation. (*Id*. at ¶ 11; Def. Resp. App. 042). Around the time Matrix denied his second short-term disability leave application, Plaintiff began working with Matrix on his request for a reasonable accommodation. (*Id*. at ¶ 11 and Ex. 15; Def. Resp. App. 042 and 069). On July 31, 2020, Plaintiff provided to

---

[1] Plaintiff's request to be reassigned is discussed below in Section F3.

Matrix a request for the following restrictions to accommodate his conditions related to his knees, hips, and back:[2]

- 30 minutes out of vehicle every two hours;
- No sit to stand more than five times per 30 minutes;
- High tables for inspections;
- No lifting of heavy items more than five times per hour;
- For every 45 minutes of walking, 15 minutes of sitting;
- No standing more than 20 minutes per hour; and
- Use of an elevator or use stairs only once every two hours.

(*Id.* at ¶ 11 and Ex. 16; Def. Resp. App. 042-43 and 081-83).

### 2. Plaintiff's request cannot be accommodated in the CSO position.

On August 18, 2020, an interactive meeting was scheduled to discuss Plaintiff's request for accommodation, which Plaintiff did not attend. (M. Young Decl. at ¶ 12 and Ex. 17; Def. Resp. App. 043 and 084). On August 25, 2020, a second interactive meeting was scheduled to discuss Plaintiff's request for accommodation. (*Id.* at ¶ 12 and Ex. 18; Def. Resp. App. 043 and 085). Plaintiff, ASD Senior Security Manager Barry Stevens, Senior ADA Compliance and Risk Analyst Mark Young, Senior Human Resources Consultant Carl Young, and Matrix Senior ADA Specialist Timm Richardson attended the meeting. (*Id.*).

During the interactive meeting, Plaintiff confirmed again that his restrictions were permanent. (Aug. 25, 2020 Mtg Tr. at 4:19-25 and 5:1-8; Def. Resp. App. 202).[3] Stevens then reviewed the CSO job description and essential job functions, focusing on the fact that the job requires flexibility and that the CSOs be able to handle whatever is required of them at any post to

---

[2] Plaintiff also identified flat feet as a disability; however, he admits he did not request an accommodation for that condition. (Pl.'s Dep. at 140:18-25 and 141:1-2; Def. Resp. App. 138).
[3] Plaintiff recorded the August 25, 2020 interactive meeting without the permission of the attendees in violation of DFW policy. (C. Young Decl. at ¶ 8 and Ex. 5; Def. Resp. App. 009 and 023; Pl.'s Dep. at 234:22-25 and 235:1-12; Def. Resp. App. 162). The recording was produced by Plaintiff as Plaintiff Bates 3134, which DFW had transcribed by a certified court reporter for this motion. (Aug. 25, 2020 Mtg Tr.; Def. Resp. App. 201-08).

which they may be assigned. (*Id*. at 7:9-17; Def. Resp. App. 203). Plaintiff asked if it was possible

to be assigned to a slower post with less activity. (*Id*. at 9:11-25, 10:1, 11:1-4; Def. Resp. App.

203-04). Stevens responded that it was not possible because all CSOs are expected to be able to

work at any post to which they may be assigned, and post assignments are made without regard to

the individual CSO. (*Id*.; *see also* A. Baucham Decl. at ¶ 7; Def. Resp. App. 003). Plaintiff next

asked why he could not continue working as he had been with co-workers assisting him when he

was unable to perform certain job duties. (Aug. 25, 2020 Mtg Tr. at 13:5-25, 14:1-3, and 15:4-13;

Def. Resp. App. 204-205).[4]  Stevens referenced his previous response and explained that DFW

could not guarantee that he would always be assigned to work with a courteous CSO who would

agree to do Plaintiff's job duties for him. (*Id*.).

### 3. Plaintiff requests to be reassigned to accommodate his restrictions but does not apply for any available positions.

Ultimately, after consideration of all the facts and circumstances, which included review

of ASD operational objectives and CSO functions, department size, number of CSOs performing

the job, costs, and safety considerations, DFW decided that it had to deny Plaintiff's request for an

accommodation. (M. Young Decl. at ¶ 13; Def. Resp. App. 043; *see also* Aug. 25, 2020 Mtg Tr.

at 16:10-20; Def. Resp. App. 205). Plaintiff acknowledged that his restrictions could not be

accommodated in his current CSO position[5] and asked about being reassigned to another position

within DFW Airport. (M. Young Decl. at ¶ 13; Def. Resp. App. 043; *see also* Aug. 25, 2020 Mtg

---

[4] Plaintiff's wife Kandice Miller was present in the room with Plaintiff for the phone call and can be heard on the recording. (Pl.'s Dep. at 234:22-25 and 235:1-12; Def. Resp. App. 162).

[5] Contrary to his acknowledgment during the call, Plaintiff later contends that he was able to perform the essential functions of his job as CSO with the physical limitations. (M. Young Decl. at ¶ 15 and Ex. 20; Def. Resp. App. 044 and 090-102). Notably, Plaintiff did not mention this during the interactive meeting. Plaintiff also later claims that DFW should have considered a "lesser solution" to his request for accommodation (Pl.'s Mot. Summ. J. at 8). However, as explained by Mark Young, Plaintiff was under the care of a medical professional and DFW could not modify the restrictions provided by Plaintiff's medical provider. (M. Young Decl. at ¶ 15 and Ex. 20; Def. Resp. App. 044 and 090-102).

**DEFENDANT'S RESPONSE TO**
**PLAINTIFF'S MOTION FOR PARTIAL**
**SUMMARY JUDGMENT AND BRIEF IN SUPPORT**                                                                9

Tr. at 16:21-25; Def. Resp. App. 205). Plaintiff was directed to DFW's online job portal to review open positions for which he may have been qualified. (M. Young Decl. at ¶ 13; Def. Resp. App. 043; *see also* Aug. 25, 2020 Mtg Tr. at 23:10-12 and 23-25; Def. Resp. App. 207). Importantly, at no point during the call did anyone promise or guarantee that Plaintiff would be reassigned to another position. (M. Young Decl. at ¶ 13; App. 043; C. Young Decl. at ¶ 5; Def. Resp. App. 008). Further, DFW does not have a policy that contemplates reassignment for medical reasons. (M. Young Decl. at ¶ 13; Def. Resp. App. 043).

It should be noted that Plaintiff had, on multiple occasions, applied for other positions within DFW and thus was aware of the process DFW used for reassignment. (C. Young Decl. ¶ 6; Def. Resp. App. 008). On August, 26, 2020, Plaintiff contacted Mark Young regarding two positions he believed he was qualified for and to which he wished to be reassigned. (M. Young Decl. at ¶ 14 and Ex. 19; Def. Resp. App. 043 and 087-89). Mark Young advised Plaintiff to apply for the positions "through the normal process," which Plaintiff did not do. (*Id*.; Pl's Dep. 225:24-25 and 226:1-4; Def. Resp. App. 159-160). When Plaintiff continued to ask Mark Young about applying for open positions, Mark Young directed Plaintiff to Carl Young in Human Resources[6] regarding open positions at DFW Airport. (M. Young Decl. at ¶ 14 and Ex. 19; Def. Resp. App. 043 and 087). On multiple occasions, Carl Young also directed Plaintiff to DFW's online job portal. (C. Young Decl. at ¶ 6 and Exs. 3 and 4; Def. Resp. App. 008, 017-18). Despite being continually advised to apply through DFW's online job portal for open positions for which he was

---

[6] Plaintiff believes that DFW was somehow hiding open positions from him in a "'super secret' job list." (Pl.'s Mot. Summ. J. at 9). However, that is not the case. DFW authorizes a certain number of positions each year and assumes a vacancy percentage rate when drafting the year's budget. (C. Puthoff Dep. 33:10-25 and 34:1-2; Def. Resp. App. 185). Although Plaintiff may believe there were certain vacant budgeted positions he could have been qualified for, such positions must also have had a request to fill in order to be posted and available for applications rather than part of the assumed vacancy percentage. (*Id*. at 36:12-18; Def. Resp. App. 185). Further, as Plaintiff was requesting reassignment, DFW was actively reducing staffing numbers due to the downturn in business caused by the COVID-19 pandemic. (*Id*. at 34:23-25 and 35:1-4; Def. Resp. App. 185).

qualified in order to be considered for reassignment, and despite being familiar with DFW's process to apply for reassignment, Plaintiff did not submit applications for any jobs between August 25, 2020 and his administrative termination on December 11, 2020. (Pl's Dep. 225:24-25 and 226:1-4; Def. Resp. App. 159-160).

### G. Plaintiff is Administratively Terminated for Exhausting the Maximum Amount of Short-Term Disability Leave Allowed Under DFW Policy.

On December 11, 2020, Plaintiff was administratively terminated for exhausting the maximum amount of short-term disability allowed within a 12-month period under DFW policy. (M. Young Decl. at ¶ 16 and Ex. 14; Def. Resp. App. 044 and 066). Importantly, Plaintiff does not dispute that he accrued the maximum amount of short-term disability leave available under DFW policy. (Pl.'s Dep. at 157:21-23; Def. Resp. App. 142).

## IV.   ARGUMENTS AND AUTHORITIES

### A. Summary Judgment Standard.

Rule 56(c) provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party must "demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). Once the movant carries this burden, the burden shifts to the nonmovant to show that summary judgment should not be granted. *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998). A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials in a pleading, and unsubstantiated assertions that a fact issue exists will not suffice. *Id*.

**A. To the Extent Plaintiff's Allegations Include Claims Other Than What is Included In his Charge or Complaint, Plaintiff has Failed to State a Claim Upon Which Relief May Granted.**

Plaintiff seeks summary judgment on Defendant's affirmative defense of failure to state a claim. (Pl.'s Mot. Summ. J. at 11-12). As an initial matter, Plaintiff has not carried his burden as the movant on summary judgment to show an absence of material fact because of the evidentiary issues set forth in Defendant's Motion to Strike. Further, a genuine issue of material fact exists concerning Defendant's affirmative defense of failure to state a claim to the extent Plaintiff's allegations in this case have exceeded what was included in his Charge of Discrimination ("Charge"), or plead in his Complaint.

In his Charge, Plaintiff contends he was discriminated against on the basis of disability, and retaliated against for requesting a reasonable accommodation. Moreover, in his Complaint, Plaintiff alleges that DFW violated the ADA by: (1) discriminating against Plaintiff because of his disability in (a) denying his request for a reasonable accommodation, (b) refusing to reassign him, and (c) administratively terminating him; and (2) retaliating against Plaintiff for requesting a reasonable accommodation by (a) refusing to reassign him, and (b) administratively terminating him. While Defendant maintains that a genuine issue of material fact <u>does not</u> exist concerning Plaintiff's claims and it is entitled to summary judgment on same as set forth in its Brief in Support of Summary Judgment, Defendant concedes that Plaintiff has not failed to allege sufficient facts on the face of his Complaint to support his discrimination and retaliation claims as pled, and withdraws the affirmative defense of failure to state a claim, only as to these claims.

However, to the extent Plaintiff continues to assert allegations concerning claims under Title VII or the Family and Medical Leave Act ("FMLA"), a genuine issue of material fact exists concerning whether Plaintiff has failed to allege sufficient facts to state a claim upon which relief may be granted under Title VII or the FMLA. Plaintiff refers to Title VII and the FMLA throughout

his Motion. (Pl.'s Mot. Summ. J. at 5, 12, and 16). In addition, Plaintiff sought information concerning his requests for FMLA leave and consideration of same during discovery, to which Defendant properly objected as not relevant to Plaintiff's claims in this matter. (Def. Amd. Resp. to Req. for Prod. Nos. 9, 14, 16, 18, 24, and 30; Def. Resp. App. 217-219 and 221; Notice of Corp. Rep. Dep. at 3 and 5; Def. Resp. App. 230and 232).[7] To the extent Plaintiff is asserting claims under Title VII or the FMLA, a genuine issue of material facts exists regarding whether Plaintiff has sufficiently plead a claim upon which relief may be granted.

Plaintiff is not entitled to summary judgment on Defendant's affirmative defense of failure to state a claim to the extent Plaintiff's allegations in this case exceed what was included in his Charge or what was plead in his Complaint, and summary judgment on this ground must be denied.

## B. Defendant Taking Reasonable Care to Promulgate Policies Against Retaliation Is an Appropriate Affirmative Defense.

Plaintiff seeks summary judgment on Defendant's affirmative defense of having exercised reasonable care to promulgate policies against retaliation as it is not an affirmative defense to retaliation or discrimination and that, regardless, Defendant has presented no evidence that it did not discriminate against Plaintiff. Plaintiff's argument on this point is nonsensical and completely unsubstantiated. Plaintiff claims his administrative termination was based on the fact that "[DFW] didn't want to keep paying disability on [him]." (Pl.'s Mot. Summ. J. at 12). Yet, the remainder of Plaintiff's short-term disability was paid to him retroactively following his successful appeal with Matrix. In fact, Plaintiff admits he received all of the short-term disability available to him *before* his termination. (Pl.'s Dep. at 157:21-23; Def. Resp. App. 142). Plaintiff's claim that Defendant did not want to continuing "pay[ing] disability on" him is incorrect and completely unfounded.

---

[7] Defendant attaches its Amended Responses to Plaintiff's Request for Production solely to support the proposition that Plaintiff made the identified request and Defendant's corresponding objection.

Moreover, Plaintiff is mistaken concerning the law. Exercising reasonable care to prevent and correct promptly any retaliation by promulgating policies against same is an appropriate affirmative defense to some discrimination claims. *See Casiano v. AT & T Corp.*, 213 F.3d 278, 284 (5th Cir. 2000) (citing *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 752 (1998); *Faragher v. City of Boca Raton*, 524 U.S. 775, 787–88 (1998)). Defendant concedes this affirmative defense has not been applied to disability discrimination and retaliation claims as the facts have been developed through discovery and, as such, withdraws this affirmative defense. However, Defendant asserts that it is entitled to present evidence concerning the existence and availability of policies prohibiting discrimination and retaliation and Defendant's practice of enforcing such policies at the time of trial and is not waiving any such right by withdrawing this defense.

### C. A Genuine Issue of Material Fact Exists as to Defendant's Mitigation of Damages Defense.

Plaintiff seeks summary judgment on Defendant's mitigation of damages affirmative defense. Plaintiff asserts Defendant's affirmative defense that Plaintiff failed to mitigate his damages by using reasonable diligence to obtain other employment is "completely contradicted" by Plaintiff's Exhibits M, N, and Q. Defendant has asserted several objections to and urged the Court to strike, or at a minimum disregard, these exhibits for various reasons set forth in Defendant's Motion to Strike.

Assuming arguendo the Court does consider these exhibits, genuine issues of material fact exist regarding Plaintiff's efforts to mitigate his damages. A plaintiff has a duty to mitigate his damages by using reasonable diligence to obtain substantially equivalent employment. *Migis v. Pearle Vision, Inc.*, 135 F.3d 1041, 1045 (5th Cir. 1998). An employer has the burden of proving a failure to mitigate, and may do so by demonstrating: (1) that substantially equivalent work was available; and (2) that Plaintiff did not exercise reasonable diligence to obtain it. *Sellers v. Delgado*

*Coll.*, 902 F.2d 1189, 1193 (5th Cir. 1990). The determination of whether or not a plaintiff used reasonable diligence in obtaining substantially comparable employment is a determination of fact. *Id*. "If an employer proves that an employee has not made reasonable efforts to obtain work, the employer does not also have to establish the availability of substantially comparable employment." *Id*.[8] The reasonableness of a plaintiff's diligence "should be evaluated in light of the individual characteristics of the claimant and the job market." *Id*.

> **1. The evidence referenced by Plaintiff does not establish that Plaintiff mitigated his damages.**

Plaintiff's claims, even construing Exhibits M, N, and Q in the light most favorable to Plaintiff, present no evidence that he fulfilled his obligation to mitigate his damages. Exhibit M consists of two separate and unrelated documents, to which Defendant has objected. The first is an email concerning open positions at DFW from September 12, 2020, which is before Plaintiff's termination on December 11, 2020. The second appears to be a print out of a spreadsheet containing job postings for which Plaintiff provides no explanation or context. Exhibit Q is also an email from before Plaintiff's termination concerning open positions at DFW. To the extent Plaintiff is claiming he mitigated his damages by applying to positions to be considered for reassignment, his argument fails because it is undisputed that Plaintiff did not submit any applications for any position between August and November 2020. Further, failing to apply as

---

[8] Other recent Fifth Circuit decisions agree that if an employer proves the employee has not exercised reasonable diligence in seeking out new employment, it need not show the availability of substantially equivalent employment. *See Jackson v. Host Int'l, Inc*., 426 F. App'x 215, 222 (5th Cir. 2011) (per curiam); *West v. Nabors Drilling USA, Inc.*, 330 F.3d 379, 393 (5th Cir. 2003). While some courts require employers to prove both elements of its failure to mitigate defense under an earlier Fifth Circuit decision, *Sparks v. Griffin*, 460 F.2d 433, 443 (5th Cir. 1972), Defendant has not found a court in the Northern District which has applied *Sparks. See Mejia v. Ayala*, No. 3:21-CV-0587-D, 2022 WL 3702027, at *2 (N.D. Tex. Aug. 26, 2022) (granting summary judgment on failure to mitigate defense where employer showed employee had not made reasonable efforts to obtain work); *Nicholson v. Securitas Sec. Servs., USA, Inc.*, No. 4:14-CV-172-O, 2016 WL 7669518, at *6 (N.D. Tex. Dec. 29, 2016) (finding fact issue as to reasonable efforts to obtain work precluded summary judgment).

instructed for reassignment does not constitute "reasonable efforts" to mitigate damages post-separation.

### 2.  A genuine issue of material fact exists as to Plaintiff's efforts to obtain work.

In regard to Plaintiff's applications following his termination, Defendant contends a genuine issue of material fact exists concerning whether Plaintiff exercised reasonable diligence to obtain work by only applying for positions at DFW. For almost two years following his administrative termination, Plaintiff only applied for positions at DFW. (Pl. Dep. at 265:15-25; Def. Resp. App. 169). In fact, Plaintiff applied for numerous positions posted by Defendant for which he was not qualified, including Executive Vice President of Operations. (Puthoff Decl. at Ex. 1; Def. Resp. App. 234-243). Yet, when Plaintiff received an interview for a position at DFW as a Parking Operations Specialist from one of his applications, Plaintiff refused the position because the starting pay was $2.50 an hour less than he wanted to be paid. (Pl. Dep. at 270:11-25; 271:1-25; 272:1-7; Def. Resp. App. 171). *See E.E.O.C v. Exxon Shipping Co.*, 745 F.2d 967, 977 (5th Cir. 1984) (finding a plaintiff breaches his duty to "exercise reasonable diligence to minimize damages," and "forfeits his right to backpay[,] if he refuses a [substantially equivalent] job" (citing *Ford Motor Co. v. E.E.O.C.*, 458 U.S. 219, 231-32 (1982)).  Additionally, Plaintiff claims that he is not required to apply to any employers outside of DFW, but cites no authority for this proposition. Defendant contends Plaintiff's efforts to obtain work were unreasonable and a fact issue remains as to whether he failed to mitigate his damages. *Fulbright v. Union Pac. R.R. Co.*, No. 3:20-CV-2392-BK, 2022 WL 975603, at *7 (N.D. Tex. Mar. 31, 2022) (denying plaintiff's motion for summary judgment where defendant "plausibly disputed" whether plaintiff's job search was reasonable). Plaintiff's motion for summary judgment on this ground should be denied.

### D. Plaintiff's Request for Accommodation was Not Reasonable and Would Pose an Undue Hardship on Defendant.

Plaintiff seeks summary judgment on Defendant's affirmative defense that Plaintiff's proposed reasonable accommodation was not reasonable and/or would pose an undue hardship on Defendant. However, summary judgment on this affirmative defense should be denied. As an initial matter, Plaintiff has not carried his burden as the movant on summary judgment to show an absence of material fact because of the evidentiary issues set forth in Defendant's Motion to Strike. Further, as set forth in Defendant's Brief in Support of Summary Judgment, Plaintiff was not a qualified individual and Plaintiff's requested accommodation would not have allowed him to perform the essential functions of this position. For the Court's convenience, Defendant briefly recites the relevant portions of the argument contained in its Motion for Summary Judgment here.

### 1. Plaintiff's requested accommodation was unreasonable because it would have required DFW to eliminate or reallocate essential functions of the CSO position.

Under the ADA, the term "qualified individual with a disability" means an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires. 42 U.S.C. § 12111. To be considered a qualified individual, Plaintiff must show that: (1) he can perform the essential functions of the job despite his disability; or (2) if he is unable to perform the essential functions of the job, that a reasonable accommodation by the employer would enable him to perform those functions. *EEOC v. LHC Grp., Inc.*, 773 F.3d 688, 697 (5th Cir. 2014).

Plaintiff now contends he could perform the essential functions of the CSO position with the physical limitations provided in his request for a reasonable accommodation, which he did not bring up during the interactive meeting. Plaintiff's argument, which he came up with after his request for accommodation was denied, assumes certain duties are marginal, rather than essential,

functions of the CSO position. However, Plaintiff is mistaken and, even with the accommodations he requested, he would not have been able to perform the essential functions of the CSO position.

A function is "essential" if it bears "more than a marginal relationship" to the employee's job. *Chandler v. City of Dall.*, 2 F.3d 1385, 1393 (5th Cir. 1993), holding modified on other grounds as discussed in *Kapche v. City of San Antonio*, 304 F.3d 493 (5th Cir. 2002) (per curiam). When considering whether a function is essential, courts owe deference to an employer's position description: "consideration shall be given to the employer's judgment as to what functions of a job are essential, and if an employer has prepared a written description before advertising or interviewing applicants for the job, this description shall be considered evidence of the essential functions of the job." 42 U.S.C. § 12111(8). "The inquiry into whether a particular function is essential initially focuses on whether the employer actually requires employees in the position to perform the functions that the employer asserts are essential." *LHC Grp., Inc.*, 773 F.3d at 698 (citing 29 C.F.R. § 1630.2(n)). The ADA does not require an employer to eliminate or reallocate essential functions of a position in order to provide accommodation. *See Bradley v. Univ. of Tex. M.D. Anderson Cancer Ctr.*, 3 F.3d 922, 925 (5th Cir.1993) (holding that while job restructuring is a possible accommodation under the ADA, an employer need not reallocate the essential functions of a job).

Here, it is undisputed that DFW has a written job description for the CSO position. DFW asserts that the duties, responsibilities, and efforts listed in the CSO job description are essential functions of the position as DFW expects all CSOs to be able to perform all of the requirements of any post to which they may be assigned.  (A. Baucham Decl. at ¶ 3; Def. Resp. App. 002). Indeed, Plaintiff does not dispute that the duties listed in the job description are the essential functions of the CSO position. (Pl.'s Dep. at 158:24-25 and 159:1-6; Def. Resp. App. 143). As

Plaintiff would have been unable to perform the essential functions of the CSO position even with his requested accommodation, the accommodation he requested was unreasonable. *Jones v. Kerrville State Hosp.*, 142 F.3d 263, 265 (5th Cir. 1998) ("As a matter of law, it is an unreasonable accommodation for the employer to have to exempt the employee from performance of an essential function of the job.").

### 2. Because Plaintiff not met his burden to show a plausible accommodation existed, the Court should not reach Defendant's undue burden defense. Even so, Plaintiff's requested accommodation placed an undue burden on Defendant.

Because Plaintiff cannot show that an accommodation existed and that such accommodation was reasonable, his argument concerning Defendant's undue burden defense is irrelevant. The plaintiff is required to demonstrate, as part of his prima facie case, that an accommodation of his disability exists and that such accommodation is reasonable. *See Riel v. Electronic Data Sys. Corp.*, 99 F.3d 678, 683 (5th Cir. 1996). Once the plaintiff has done this, the defendant has the burden of showing that the proposed accommodation is unreasonable, which "merges, in effect, with its burden of showing, as an affirmative defense, that the proposed accommodation would cause it to suffer an undue hardship." *Amato v. St. Luke's Episcopal Hosp.*, 987 F. Supp. 523, 531 (S.D. Tex. 1997) (internal citations omitted).

Here, Defendant has not met his initial burden. Plaintiff's requested accommodation was unreasonable as a matter of law because it would require eliminating essential functions of the CSO position. Even if he had, Defendant has raised a genuine issue of material fact as to whether Plaintiff's requested accommodation caused an undue burden. Undue hardship exists when an employer is required to bear more than a de minimis cost. *Antoine v. First Student, Inc.*, 713 F.3d 824, 839 (5th Cir. 2013). As explained above, the CSO position requires flexibility. CSOs are expected to perform a variety of tasks at any given time as is the nature of a security position. Plaintiff's requested accommodation would require Defendant to change how it schedules CSOs,

exempt Plaintiff from certain posts, and result in a disproportionate workload assigned to other CSOs. None of these are a de minimis measure and each would pose an undue hardship on Defendant. *See Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63, 81 (1977) (finding an undue burden is present if the proposed accommodation would force changes in the schedules of other employees and alter the employer's otherwise neutral procedure); *Bruff v. N. Mississippi Health Servs., Inc*., 244 F.3d 495, 501 (5th Cir. 2001) (requiring other employees "to assume a disproportionate workload" is "an undue hardship as a matter of law"); *Weber v. Roadway Express*, 199 F.3d 270, 274 (5th Cir. 2000) ("The mere possibility of an adverse impact on co-workers . . . is sufficient to constitute an undue hardship.").   Accordingly, Plaintiff's motion for summary judgment on this ground should be denied for the reasons set forth above and in Defendant's Brief in Support of Motion for Summary Judgment.

### E.  Plaintiff was Not Regarded as Having an Impairment or Disability by Defendant or Defendant's Employees.

Plaintiff seeks summary judgment on Defendant's affirmative defense that Plaintiff was not regarded as having an impairment or disability by Defendant or Defendant's employees. As an initial matter, Plaintiff has not carried his burden as the movant on summary judgment based on the evidentiary issues set forth in Defendant's Motion to Strike on this claim. Further, Plaintiff's Motion on this point is nonsensical in that he appears to think this defense means Defendant was oblivious to Plaintiff's alleged disabilities.  To the contrary, a "regarded as" claim is typically a separate claim pled under the ADA.

Under the ADA, "[t]he term 'disability' means, with respect to an individual—(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2)(A)-(C). Plaintiff plead his claims generally as "disability

discrimination" and not under a specific prong of the ADA. Defendant asserted this defense out of an abundance of caution in the event Plaintiff pursued his claim under the "regarded as" prong. As it is clear now that Plaintiff is proceeding under the actual disability prong of the ADA, not the regarded as prong, Defendant withdraws this affirmative defense.

### F.  A Genuine Issue of Material Fact Exists as To Whether Plaintiff has a Disability as Defined by the ADA.

Plaintiff seeks summary judgment on Defendant's affirmative defense that Plaintiff does not have a disability as defined by the ADA. Defendant did not move for summary judgment on this element of Plaintiff's claims, instead asking the court to hold that Plaintiff cannot meet the other elements of his prima facie case. Nonetheless, for purposes of this Response, Defendant contends that a genuine issue of material fact exists as to whether Plaintiff has a disability.

To show he suffers from an actual disability, a plaintiff must show he has "a physical or mental impairment that substantially limits one or more major life activities." 42 U.S.C. § 12102(1)(A). As an initial matter, Plaintiff has not met his burden as the movant on summary judgment to show a fact issue does not exist as to whether or not he has a disability under the ADA. Plaintiff has failed to properly attach any competent summary judgment evidence and even what he did include does not prove up his disability. Plaintiff cites vaguely to his "exhibits, especially the ones regarding the appeal of his denial of short-term disability, the Defendants' [sic] complaints about it being permanent, and the failure to help Mr. King find a way to do his job" as proof that he has satisfied the definition of disability under the ADA. (Pl.'s Mot. Summ. J. at 15). First, this does not satisfy the definition of disability under the ADA. At most, the Court could infer from these documents that Plaintiff had a physical impairment and he applied for short-term disability. However, "[a] physical impairment, standing alone, is not necessarily a disability as contemplated by the ADA. The statute requires an impairment that substantially limits one or more

of the major life activities." *Dutcher v. Ingalls Shipbuilding*, 53 F.3d 723, 726 (5th Cir. 1995). Plaintiff must show that the impairment or condition limits a major life activity, which the documents referred to by Plaintiff do not establish. *Id*. Second, a genuine issue of material fact exists regarding his disability as Plaintiff's long-term disability request was denied because Plaintiff reported having no back pain as of December 18, 2020, just one week after his termination. (Reliance Decl.; Def. Resp. App. 244-49). *See E.E.O.C. v. Chevron Phillips Chem. Co.*, 570 F.3d 606, 618 (5th Cir. 2009) ("[T]he relevant time for assessing the existence of a disability is the time of the adverse employment action."). Therefore, Plaintiff's Motion for Summary Judgment should be denied.

### G. Plaintiff's Claims are Barred in Whole or in Part to the Extent he Failed to Exhaust Administrative Remedies, They Exceed the Scope of the Allegations Contained in His Charge, or They Are Outside the Applicable Limitations Period.

Plaintiff claims summary judgment should be granted on Defendant's affirmative defenses of failing to exhaust administrative remedies, exceeding the scope of the allegations contained in the Charge, and asserting claims outside of the applicable limitations period. However, a genuine issue of material fact exists concerning these affirmative defenses to the extent Plaintiff's allegations in this case have exceeded what was included in his Charge or plead in his Complaint.

In his Charge, Plaintiff contends he has been discriminated against on the basis of disability and retaliated against for requesting a reasonable accommodation. Moreover, in his Complaint, Plaintiff alleges that DFW violated the ADA by: (1) discriminating against Plaintiff because of his disability in (a) denying his request for a reasonable accommodation, (b) refusing to reassign him, and (c) administratively terminating him; and (2) retaliating against Plaintiff for requesting a reasonable accommodation by (a) refusing to reassign him, and (b) administratively terminating him. While Defendant maintains that a genuine issue of material fact <u>does not</u> exist concerning

Plaintiff's claims and it is entitled to summary judgment on same as set forth in its Brief in Support of Summary Judgment, Defendant withdraws its failure to exhaust administrative remedies, exceeding the scope of the Charge, and asserting claims outside of the applicable limitations period as to Plaintiff's disability discrimination and retaliation claims on these bases alone.

A plaintiff in an employment discrimination case may seek relief only for alleged acts that were presented to the EEOC in a charge of discrimination. *Young v. City of Houston*, 906 F.2d 177, 179 (5th Cir. 1990). The scope of the judicial complaint is limited to the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination. *Id.* As explained above, Plaintiff appears to continue to assert allegations concerning claims under Title VII or the FMLA. Plaintiff has failed to exhaust administrative remedies as to these alleged claims as his Charge does not include discrimination based on any Title VII protected trait. (Pl.'s Ex. W; Pl.'s App. 90-92). *See Thomas v. Tex. Dep't of Criminal Justice*, 220 F.3d 389, 395 (5th Cir. 2000) (finding an EEOC charge did not encompass a race claim where the charge only alleged gender as the theory of discrimination). Further, to the extent Plaintiff seeks to make these allegations part of this litigation, these claims should fail as they exceed the scope of his Charge. Finally, because Plaintiff did not include these allegations in his Charge, these claims are outside of the applicable limitations period.

Additionally, Plaintiff continues to allege facts which seem to expand the basis for his discrimination and retaliation claim outside of what has been plead in his Charge and his Complaint, including allegations concerning failure to engage in the interactive process and failure to rehire. To the extent Plaintiff intends these allegations to be the bases of his claims in this matter, Defendant asserts that a genuine issue of material fact exists concerning whether Plaintiff failed to

exhaust his administrative remedies, has exceeded the scope of his Charge, and whether such claims and allegations are outside the applicable limitations period.

Plaintiff is not entitled to summary judgment on Defendant's affirmative defenses of failure to exhaust administrative remedies, exceeding the scope of his Charge, and applicable limitations period to the extent Plaintiff's claims and allegations in this case exceed what was included in his Charge or what was plead in his Complaint, and summary judgment on these grounds must be denied.

**H.  Defendant is Entitled to Statutory Limits on Punitive Damages.**

Plaintiff seeks summary judgment on Defendant's affirmative defense that Plaintiff's claim for punitive damages is barred by due process. Defendant agrees to withdraw this affirmative defense but asserts that it is entitled to the statutory limits on punitive damages supplied by the ADA and Texas Civil Practice and Remedies Code § 41.001, et. seq. and the application of the clear and convincing standard of proof on this portion of Plaintiff's case at trial. 42 U.S.C. § 1981a(a)(2)–(3), (b)(3).

**I.  A Genuine Issue of Material Facts Exists as to Whether Plaintiff's Allegations are Frivolous, Groundless, or Unreasonable as to Entitle Defendant to its Attorney's Fees.**

Plaintiff seeks summary judgment on Defendant's affirmative defense that seeks attorney's fees and costs because Plaintiff's lawsuit is frivolous, groundless, or unreasonable. The ADA authorizes courts to award attorney's fees to a prevailing party, 42 U.S.C. § 12205. "[A] district court may in its discretion award attorney's fees to a prevailing defendant . . . upon a finding that the plaintiff's action was frivolous, unreasonable, or without foundation." *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 421 (1978). As an initial matter, Defendant asserts Plaintiff has failed to meet its burden as the movant and attach competent summary judgment evidence in support of

this argument. Even if Plaintiff did present sufficient support, Defendant contends a genuine issue of material fact still exists as Plaintiff's claim is frivolous for the reason that he was administratively terminated under a neutral leave policy, which had absolutely nothing to do with Plaintiff's alleged disability or request for accommodation. Defendant additionally contends Plaintiff's claim are frivolous to the extent his claims are based on his alleged request for reassignment, because he never applied for any open positions with DFW despite being instructed to do so on several occasions. A genuine issue of material facts exists for the Court to decide and Plaintiff's Motion for Summary Judgment should be denied.

## V.   CONCLUSION

Defendant respectfully requests that the Court deny Plaintiff's Motion for Partial Summary Judgment on all grounds other than the defenses withdrawn above and for such other further relief to which Defendant may be entitled in law or equity.

Respectfully submitted,

By: */s/ Caroline C. Harrison*

Caroline C. Harrison
State Bar No. 24046034
charrison@phamharrison.com
Spencer M. Mainka
State Bar No. 24116707
smainka@phamharrison.com
PHAM HARRISON, LLP
505 Pecan Street, Suite 200
Fort Worth, Texas 76102
(817) 632-6300
(817) 632-6313 – Fax

**ATTORNEYS FOR DEFENDANT**

## <u>CERTIFICATE OF SERVICE</u>

       The undersigned hereby acknowledges that a true and correct copy of the above-mentioned document was served in accordance with the Federal Rules of Civil Procedure on this the 29th day of June, 2023 on counsel for Plaintiff as follows:

Wes Dauphinot
Law Offices of Wes Dauphinot, P.C.
900 West Abram
Arlington, Texas 76103
wes@dauphinotlawfirm.com

Hani F. Kobty
Kobty Law Firm
900 West Abram
Arlington, Texas 76103
hani@kotbylawfirm.com

**ATTORNEYS FOR PLAINTIFF**

                                             */s/ Caroline C. Harrison*
                                             Caroline C. Harrison