IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| NATHANIEL KING | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:22-CV-929-P |
| | § | |
| | § | |
| DALLAS-FORT WORTH | § | |
| INTERNATIONAL AIRPORT BOARD, | § | |
| | § | |
| Defendant. | § | |

**DEFENDANT DALLAS-FORT WORTH
INTERNATIONAL AIRPORT BOARD'S REPLY
TO PLAINTIFF'S RESPONSE TO ITS MOTION FOR SUMMARY JUDGMENT**

**TABLE OF CONTENTS**

I.   PLAINTIFF'S CLAIMS ................................................................................................... 1

II.  REPLY ............................................................................................................................. 2

   A. Summary Judgment Is Proper on Plaintiff's Discrimination Claims Because Plaintiff Is Not a Qualified Individual Under The ADA. ............................................................ 2

      1. Plaintiff misinterprets the standard for determining an essential job function. 2

      2. Plaintiff could not perform the essential functions of the CSO position. ............ 3

      3. Plaintiff could not perform the essential functions of the CSO position with the physical limitations provided in his request for accommodation. ................................ 4

   B. Summary Judgment Is Proper on Plaintiff's Discrimination and Retaliation Claims Based on a Failure to Reassign Because Plaintiff Did Not Apply for Any Jobs Between August and November 2020 as Instructed. .................................................................. 7

      1. Plaintiff had access to DFW's online job portal outside of work. ....................... 7

      2. Plaintiff did not submit any applications for positions to be considered for reassignment between August and November 2020. ....................................... 9

3. Plaintiff's post-termination applications are not applications for reassignment. 12

C. Summary Judgment Is Proper on Plaintiff's Claims Because Plaintiff Cannot Show DFW's Legitimate Nondiscriminatory Nonretaliatory Reason for Plaintiff's Termination is Pretext.................................................................................................13

III. CONCLUSION ...............................................................................................................14

# TABLE OF AUTHORITIES

**Cases**

*EEOC v. LHC Grp., Inc.*,
773 F.3d 688, 569 (5th Cir. 2014) ............................................................................... 2-4

**Regulations**

29 C.F.R. § 1630.2............................................................................................................2

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| NATHANIEL KING | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:22-CV-929-P |
| | § | |
| | § | |
| DALLAS-FORT WORTH | § | |
| INTERNATIONAL AIRPORT BOARD, | § | |
| | § | |
| Defendant. | § | |

**DEFENDANT DALLAS-FORT WORTH
INTERNATIONAL AIRPORT BOARD'S REPLY
TO PLAINTIFF'S RESPONSE TO ITS MOTION FOR SUMMARY JUDGMENT**

TO THE HONORABLE COURT:

Dallas-Fort Worth International Airport Board ("DFW" or "Defendant"), Defendant in the above-referenced case, files this Reply to Plaintiff's Response to Defendant's Motion for Summary Judgment ("Response") (Doc. 27), and asks the Court to grant its Motion for Summary Judgment (Doc. 20) for the reasons set forth below and in its Brief in Support of same (Doc. 21) (together "Motion"). In support, Defendant respectfully shows the Court as follows:

### I.   PLAINTIFF'S CLAIMS

DFW's Motion for Summary Judgment seeks summary judgment on all of Plaintiff Nathaniel King's ("Plaintiff") claims. In his Complaint (Doc. 1), Plaintiff alleges DFW violated the Americans with Disabilities Act and the ADA Amendments Act (collectively the "ADA") by:

(1) discriminating against Plaintiff because of his disability in:

    (a) denying his request for a reasonable accommodation;

    (b) refusing to reassign him; and

>> (c) administratively terminating him; and
>
> (2) retaliating against Plaintiff for requesting a reasonable accommodation by:
>
>> (a) refusing to reassign him; and
>>
>> (b) administratively terminating him.

DFW requests the Court grant its Motion for Summary Judgment in its entirety because there is no genuine dispute as to any material fact on any of Plaintiff's claims, and summarily dismiss all of Plaintiff's claims as a matter of law.

## II.   REPLY

### A. Summary Judgment Is Proper on Plaintiff's Discrimination Claims Because Plaintiff Is Not a Qualified Individual Under The ADA.

#### 1. *Plaintiff misinterprets the standard for determining an essential job function.*

DFW contends Plaintiff is not a qualified individual under the ADA because he could not perform the essential functions of the CSO position with his alleged disability or with the physical limitation set forth in his request for accommodation. In his Response, Plaintiff disputes the standard proffered by DFW for determining an "essential job function." (*See* Def.'s Mot. Summ. J. at 12). Plaintiff argues the Court should look at "what is actually required to perform the job" to determine essential job functions rather than the written job description. (Pl.'s Resp. at 15). Plaintiff points to *EEOC v. LHC Grp., Inc.* to support this argument. However, Plaintiff's interpretation of *EEOC v. LHC Grp., Inc.* is incorrect.

In *LHC Grp., Inc.*, the Fifth Circuit reviewed the essential functions proffered by the employer to determine "whether the employer *actually requires* employees in the position to perform the functions that the employer asserts are essential." 773 F.3d 688, 698 (5th Cir. 2014) (quoting the Interpretive Guidance on Title I of the ADA 29 C.F.R. pt. 1630, app. § 1630.2(n)). The Court continued "[f]or example, an employer may state that typing is an essential function of

a position. If, in fact, the employer has never required any employee in that particular position to type, this will be evidence that typing is not actually an essential function of the position." *Id*. The Fifth Circuit began its analysis with the written job description requirements identified by the employer as essential functions of the position. *Id*. The Court then determined whether the employer actually required employees employed in that position to perform the identified task. *Id*.

Here, Plaintiff asks the Court to start with, not the essential functions identified by DFW in the job description, but rather Plaintiff's own determination of "what is actually required to perform the job." This is an incorrect reading of *LHC Grp., Inc.* and of the requirements under the ADA. If DFW can show, as it has done in its Motion, that it *actually requires* employees in the CSO position to perform the duties, responsibilities, and efforts listed in the written job description, such duties, responsibilities, and efforts are essential functions of the CSO position regardless of what Plaintiff considers necessary to perform the job. *See id*.

### 2. *Plaintiff could not perform the essential functions of the CSO position.*

Here, the summary judgment evidence establishes that DFW requires all CSOs to be able to perform the duties, responsibilities, and efforts listed in the written job description at any given time because the duties required at each post differ and may change at a moment's notice, as is the nature of a role in security. (A. Baucham Decl. at ¶ 6 and Ex. 1; Def. Mot. App. 002 and 004-006). Plaintiff admits that he performed, as did all CSOs, the duties and responsibilities listed on the CSO job description. (Pl.'s Dep. at 93:17-25 and 94:1; Def. Mot. App. 126-127). Plaintiff's own witness statements admit that DFW requires all CSOs to perform such duties, responsibilities, and efforts. (K. Miller Decl. and S. Jones Decl.; Pl's Resp. App. 008-0016 and 0096-0103). Accordingly, the duties, responsibilities, and efforts listed on the written job description are essential functions of the CSO position.

In his Response, Plaintiff argues that he "can and has performed all aspects of the job" and cites to the witness statements of Kandice Miller, his wife and former co-worker, and Sam Jones, his former co-worker. (Pl.'s Resp. at 15). However, this testimony is limited to the time before Plaintiff returned to work with the physical restrictions that now form the basis of his alleged disability as set forth in his request for accommodation.[1] (*See* M. Young Decl. at ¶ 5 and Ex. 3; Def. Mot. App. 040 and 050). Plaintiff has produced no evidence that he was able to perform the essential functions of the CSO position with his alleged disability as set forth by his physician in his request for accommodation.

### 3. *Plaintiff could not perform the essential functions of the CSO position with the physical limitations provided in his request for accommodation.*

If an employee cannot perform an essential job function without accommodation, the Court must next consider whether he can do so with a reasonable accommodation. *LHC Grp., Inc.*, 773 F.3d at 697. Plaintiff requested a chair with back support *and* the following adjustments to his physical activities in the request for accommodation he submitted to Matrix:

- 30 minutes out of vehicle every two hours;
- No sit to stand more than five times per 30 minutes;
- High tables for inspections;
- No lifting of heavy items more than five times per hour;
- For every 45 minutes of walking, 15 minutes of sitting;
- No standing more than 20 minutes per hour; and
- Use of an elevator or use stairs only once every two hours.

(M. Young Decl. at ¶ 11 and Ex. 16; Def.'s Mot. App. 042-43 and 081-83). In his Response, Plaintiff cites to the declaration of his wife, Kandice Miller, and a former co-worker, Sam Jones, as evidence that his physical limitations did not interfere with his performance of the essential

---

[1] Ms. Miller's Declaration states that she stopped working in the CSO position on February 4, 2019. (K. Miller Decl. at 1; Pl.'s Resp. App at 008). Mr. King returned to work with restrictions on January 13, 2020. M. Young Decl. at ¶ 5 and Ex. 3; Def. Mot. App. 040 and 050). Mr. Jones' Declaration states that he stopped working in the CSO role in 2019, without providing a specific date (S. Jones Decl. at 1; Pl.'s Resp. App. at 096).

functions of the job. (Pl.'s Resp. at 20). Defendant has filed, contemporaneously with this Reply, a motion to strike to the statements of Miller and Jones concluding that Plaintiff could perform the essential functions of the job with the requested physical limitations as such statements are speculative, conclusory, lacking foundation, and lacking personal knowledge. Neither Miller nor Jones is qualified to speak to Plaintiff's physical abilities.

Plaintiff claims that DFW has never explained how Plaintiff's requested accommodations would prevent him from performing the essential functions of the CSO position, but that claim is false. During the interactive meeting on August 25, 2020, ASD Senior Security Manager Barry Stevens reviewed the essential functions of the CSO position and explained that the job requires flexibility and that the CSOs must be able to handle whatever is required of them at any post to which they may be assigned. (Aug. 25, 2020 Mtg Tr. at 7:9-17; Def.'s Mot. App. 203). For example, in regard to the inspection of vehicles and individuals entering through Air Operations Area gates, Stevens provided:

> The job requirement requires you to be able to handle whatever traffic flow comes in. We can't forecast what's can happen and . . . as you know, luck of the draw, the (sic) you are assigned on a daily basis. And if you happened to be stationed at an exceptionally busy portal or an exceptionally busy gate, you can't fit within those restrictions as they're laid out.

(*Id*.) Concerning Plaintiff's experience at slower gates, Stevens explained:

> There's no guarantee of that though. There's no guarantee that's going to happen. Some of these constructions gates ramp up at night. . . . We look at the security officer as a security officer. They're all the same. And we -- we try to rotate you at the portals and gates, but we don't – we don't say, "Well, because you have an accommodation" again, we're having to – somebody else is going to have to carry that load.

(*Id*. at 9:15-25; Def.'s Mot. App. at 203). In response to Plaintiff's experience with other CSOs helping him perform inspections of individuals entering through employee portals and their personal belongings, Stevens explained:

> The difference is that's not the job description. And if -- and if something would happen one day and somebody says, I don't give a crap what's wrong with you. I -- you know, you have to pull your load. What happens when that happens? So I have to -- I have to look at it in a non-biased manner and say, this is the job description. You have a job to do irrespective of what gate or what portal you may be working.

(*Id*. at 13:17-25 and 14:1; Def's Mot. App. 204-05). Moreover, after Plaintiff's request for accommodation was denied, Plaintiff and Mark Young exchanged several emails concerning Plaintiff's physical limitations and how Plaintiff's requested accommodations would prevent him from performing the essential functions of the CSO position. (M. Young Decl. at ¶ 15 and Ex. 20; Def.'s Mot. App. 044 and 090-102). Following the pattern that we now see in his Response, in that exchange, Plaintiff relied on his own interpretation of what was necessary to perform the job rather than the essential functions identified by DFW.

Plaintiff further insists that DFW somehow erred by considering Plaintiff's request for accommodation as a whole, rather than considering each individual restriction separately. (*See* Pl.'s Resp. at 18-19). Defendant's Corporate Representative Catrina Gilbert confirmed that DFW looks at the accommodation as a whole, not by individual request. (Gilbert Dep. 22:2-20; Pl.'s Resp. App. at 141). Plaintiff cites no authority to support his proposition that DFW was somehow obligated to consider each limitation individually, despite the fact that all were identified as physical adjustments by his medical provider. Plaintiff also attempts to rewrite history by claiming that the only accommodation he requested was for a chair with a back and a higher table. (*See* Pl.'s Resp. at 7, 16-20).  Plaintiff did not bring this up during the interactive meeting or before his

accommodation request was denied. He did bring this up during the lengthy email exchange with Mark Young, however, as Mr. Young explained, if Plaintiff's limitations had changed, he had the opportunity to meet with his medical provider and submit updated restrictions and request for accommodation, which Plaintiff did not do. (M. Young Decl. at ¶ 15 and Ex. 20; Def.'s Mot. App. 044 and 090-102).

Plaintiff has not raised a fact issue as to whether Plaintiff was able to perform the essential functions of the CSO position with his alleged disability or with the physical limitations sought in his request for accommodation. Plaintiff is not a qualified individual under the ADA, and Defendant is entitled to summary judgment.

**B. Summary Judgment Is Proper on Plaintiff's Discrimination and Retaliation Claims Based on a Failure to Reassign Because Plaintiff Did Not Apply for Any Jobs Between August and November 2020 as Instructed.**

DFW contends, and Plaintiff admits, that Plaintiff did not apply for any positions through DFW's online job portal between August and November 2020, the time during which he was seeking reassignment. In his Response, Plaintiff claims he applied for numerous jobs with DFW between August and November 2020 to support his discrimination and retaliation claims. Plaintiff has lumped together several different types of positions, both available and unavailable, in order to mislead the Court into thinking he properly applied for reassignment when he did not.

*1. Plaintiff had access to DFW's online job portal outside of work.*

DFW requires an application through the online job portal in order to be considered for a position. (C. Young Decl. at ¶ 6; Def.'s Mot. App. 008). Plaintiff was directed to apply through the online portal numerous times. (M. Young Decl. at ¶ 13; Def.'s Mot. App. 043; see also Aug. 25, 2020 Mtg Tr. at 23:10-12 and 23-25; Def.'s Mot. App. 207; C. Young Decl. at ¶ 6 and Exs. 3 and 4; Def.'s Mot. App. 008, 017-18). Plaintiff admits he did not submit applications through the

online portal for any jobs between August 25, 2020 and his administrative termination on December 11, 2020. (Pl's Dep. 225:24-25 and 226:1-4; Def.'s Mot. App. 159-160). In his deposition, Plaintiff explained this was because he was following the supposed instruction from the August 25 interactive meeting for applying for reassignment (that he should email Mark Young). (*Id*. at 226:4-17; Def.'s Mot. App. 160). Plaintiff now claims, for the first time in this case, that he did not submit any applications through the online portal because he had to be at work to access the portal. (*See* Pl.'s Resp at 25 and 28). This is false.

Plaintiff did have access to DFW's online job portal outside of work as evidenced by his numerous applications submitted to DFW both before and after his accommodation request. In fact, the screenshot of the online job portal showing Plaintiff's applications, produced by Plaintiff in this litigation, shows that he was able to access the portal on numerous occasions to apply for positions when he was not physically at DFW. (Pl.'s Job Application Portal Screenshots; Def.'s Mot. App. 213-215). These screenshots show that Plaintiff had access to the online portal from home. Plaintiff submitted several applications through the online portal to work at DFW Airport *before* he was hired as a CSO on February 8, 2016. (*Id*.) Likewise, Plaintiff submitted numerous applications through the portal *after* he was administratively terminated on December 11, 2020. (*Id*.) Further, in each instance where Plaintiff was instructed to apply through the online portal, Plaintiff never once said he could not do that due to lack of access. (M. Young Decl. at ¶ 13; Def.'s Mot. App. 043; see also Aug. 25, 2020 Mtg Tr. at 23:10-12 and 23-25; Def.'s Mot. App. 207; C. Young Decl. at ¶ 6 and Exs. 3 and 4; Def.'s Mot. App. 008, 017-18). Yet Plaintiff now claims he was unable to access the portal unless he was at work and that is why he failed to submit any applications between August 25 and December 11, 2020. Plaintiff's last minute assertion is unavailing.

To the extent Plaintiff is claiming he did not have access to certain "secret" positions from the job list that he received from his wife to submit an application through the portal, Plaintiff is mistaken. DFW does not have a "secret" or "open but unposted" job list. The list provided to Plaintiff by his wife lists the budgeted positions for the year. (C. Puthoff Dep. 33:10-25 and 34:1-2; Def.'s Mot. App. 185). However, DFW assumes a certain vacancy percentage rate when drafting its budget, and not all vacant positions were being filled at the time Plaintiff's wife obtained this list. (*Id*.) As such, only positions with a request to fill at the time Plaintiff was seeking reassignment would have been open and available for applications through the online portal. (*See id*. at 36:12-18; Def.'s Mot. App. 185).

### 2. *Plaintiff did not submit any applications for positions to be considered for reassignment between August and November 2020.*

In his Response, Plaintiff relies on emails he sent to Carl Young and spreadsheets produced by Defendant from its applicant tracking system in an attempt to raise a fact issue as to whether Plaintiff applied for any positions to be considered for reassignment between August and November 2020. However, Plaintiff's circular and confusing argument lacks merit.

Plaintiff attaches three different spreadsheets to try to raise a fact issue as to whether he applied for positions without using the online portal. Plaintiff's Exhibit M (Pl.'s Resp. App at 285-86) and Exhibit O (*Id*. at 299-302) appear to be copies of DFW 428,[2] however Plaintiff's Exhibit M appears to have excluded some of the columns included in Exhibit O. Plaintiff cites to Exhibits M and O for the proposition that the positions identified by Carl Young in his September 12, 2020 email (C. Young Decl. at ¶ 6 and Ex. 4; Def.'s Mot. App. 008 and 013-16) appear on this spreadsheet, which is alleged to reflect positions to which Plaintiff supposedly applied. However,

---

[2] In the deposition of Cyril Puthoff, Mr. Puthoff expressed uncertainty as to the accuracy of DFW 428, which should be noted here. (C. Puthoff Dep at 18:23-25 and 19:1-9; Def.'s Mot. App. at 181).

Exhibits M and O do not list the date Plaintiff would have applied to any of these positions. Exhibits M and O simply identify a position, the date the position opened, and the date it closed.

Of the spreadsheets relied upon by Plaintiff, only Exhibit N, produced as DFW 427, provides the date Plaintiff applied for any of the positions in the list. (Pl.'s Resp. App. 287-294). Exhibit N provides a list of all positions applied for by Plaintiff, the posting title, and the job opening ID number, the disposition status of each application (including each step in between application and the ultimate disposition), and the date of such status. (*Id.*). Upon review of the dates Plaintiff applied to these positions, it is clear that Plaintiff did not apply for any positions between August and November 2020. (*Id.*). In fact, only one of the positions identified as open by Carl Young on September 12, 2020 appears in Exhibit N, Terminal Experience Manager (Job Opening 1005185) which Plaintiff applied to on January 10, 2021. (*Id.*) For the convenience of the Court, Defendant has filtered the list to include only Plaintiff's applications and then sorted the results by date:

| | A | B | C | D | E | F | G | H | I | J |
|---|---|---|---|---|---|---|---|---|---|---|
| 1 | DFW_HRIS_NATHA | 152 | | | | | | | | |
| 2 | Name | Applicant ID | Job Opening | JO Status | Posting Title | Status Date | Disposition | Reject Reason | Hired Applicant | Hired Name |
| 4 | King,Nathan R. | 285623 | 1003052 | 110 Filled/Closed | Occupancy Management Specialist | 8/13/15 | 010 Applied | | 43106 | Nanga,Masikini E |
| 5 | King,Nathan R. | 285623 | 1003056 | 110 Filled/Closed | Terminal Relations Coordinator | 8/13/15 | 010 Applied | | 252759 | Meloy,Kristin Marie |
| 8 | King,Nathan R. | 285623 | 1003062 | 110 Filled/Closed | Civilian Security Officer | 8/26/15 | 010 Applied | | 285731 | Figueroa,Carlos R. |
| 11 | King,Nathan R. | 285623 | 1003075 | 110 Filled/Closed | Administrative Assistant II | 8/26/15 | 010 Applied | | 287436 | Cangolosi,Karen |
| 14 | King,Nathan R. | 285623 | 1003040 | 110 Filled/Closed | Administrative Assistant II | 10/14/15 | 010 Applied | | 212112 | Phillips,Sherry Lynn |
| 18 | King,Nathan R. | 285623 | 1003062 | 110 Filled/Closed | Civilian Security Officer | 11/15/15 | 010 Applied | | 285731 | Figueroa,Carlos R. |
| 19 | King,Nathan R. | 285623 | 1003157 | 110 Filled/Closed | Access Control Trusted Agent | 11/15/15 | 010 Applied | | 42044 | Zabojnik III,Jerome C |
| 28 | King,Nathan R. | 285623 | 1003062 | 110 Filled/Closed | Civilian Security Officer | 11/24/15 | 010 Applied | | 285731 | Figueroa,Carlos R. |
| 29 | King,Nathan R. | 285623 | 1003157 | 110 Filled/Closed | Access Control Trusted Agent | 11/24/15 | 010 Applied | | 42044 | Zabojnik III,Jerome C |
| 32 | King,Nathan R. | 285623 | 1003166 | 110 Filled/Closed | Parking Operations Communications Spec | 11/24/15 | 010 Applied | | 289872 | Pineda,Jonas |
| 34 | King,Nathaniel R | 293814 | 1003537 | 110 Filled/Closed | Security Shift Supervisor | 2/17/17 | 010 Applied | | 304055 | Hardin,Kiamesha P |
| 40 | King,Nathaniel R | 293814 | 1003882 | 110 Filled/Closed | Security Compliance Inspector | 5/19/17 | 010 Applied | | 22482 | Wilson,Scottie L |
| 43 | King,Nathaniel R | 293814 | 1003908 | 110 Filled/Closed | Security Shift Supervisor (Department On | 6/14/17 | 010 Applied | | 306019 | Boston,Chris W |
| 45 | King,Nathaniel R | 293814 | 1004728 | 110 Filled/Closed | Assistant Security Services Manager | 5/10/19 | 010 Applied | | 349116 | Thompson,Rodney W. |
| 55 | King,Nathan R. | 285623 | 1005188 | 120 Canceled | 911 Telecommunicator | 12/27/20 | 010 Applied | | 0 | |
| 56 | King,Nathan R. | 285623 | 1005244 | 110 Filled/Closed | Airfield Operations Agent | 12/27/20 | 010 Applied | | 364103 | Santhanam,Alexis |
| 57 | King,Nathan R. | 285623 | 1005249 | 110 Filled/Closed | Access DFW Trusted Agent | 12/27/20 | 010 Applied | | 295131 | Birmingham,Michael J |
| 62 | King,Nathan R. | 285623 | 1005185 | 110 Filled/Closed | Terminal Experience Manager | 1/10/21 | 010 Applied | | 359516 | Klausner,Kyle L. |
| 65 | King,Nathan R. | 285623 | 1005215 | 110 Filled/Closed | Risk Analyst (Safety) | 1/10/21 | 010 Applied | | 363298 | Ford,Meghan Desiree |
| 66 | King,Nathan R. | 285623 | 1005258 | 110 Filled/Closed | Executive Vice President of Operations | 1/10/21 | 010 Applied | | 365022 | McLaughlin,Christopher |
| 69 | King,Nathan R. | 285623 | 1005205 | 110 Filled/Closed | Business Supplier Diversity Specialist | 1/17/21 | 010 Applied | | 363823 | Schwartz,Angela Maria |
| 72 | King,Nathan R. | 285623 | 1005260 | 110 Filled/Closed | Integrated Operations Center Specialist | 1/17/21 | 010 Applied | | 259764 | Melchor,Christopher |
| 75 | King,Nathan R. | 285623 | 1005267 | 110 Filled/Closed | Instrument & Controls Technician | 1/17/21 | 010 Applied | | 364894 | Blackwell,Blake |
| 78 | King,Nathan R. | 285623 | 1005185 | 110 Filled/Closed | Terminal Experience Manager | 2/21/21 | 010 Applied | | 359516 | Klausner,Kyle L. |
| 81 | King,Nathan R. | 285623 | 1005188 | 120 Canceled | 911 Telecommunicator | 2/21/21 | 010 Applied | | 0 | |
| 84 | King,Nathan R. | 285623 | 1005284 | 110 Filled/Closed | Inventory Control Clerk | 2/21/21 | 010 Applied | | 365672 | Ott III,Charles Edward |
| 87 | King,Nathan R. | 285623 | 1005326 | 110 Filled/Closed | Terminal Experience Supervisor | 4/18/21 | 010 Applied | | 350267 | Lin,Ting Wei |
| 90 | King,Nathan R. | 285623 | 1005331 | 110 Filled/Closed | Airfield Operations Agent | 4/18/21 | 010 Applied | | 366989 | Flatt,Sarah Elisabeth |
| 93 | King,Nathan R. | 285623 | 1005333 | 110 Filled/Closed | Security Access Supervisor | 4/18/21 | 010 Applied | | 322972 | Barker,Melissa J |
| 94 | King,Nathan R. | 285623 | 1005333 | 110 Filled/Closed | Security Access Supervisor | 5/4/21 | 010 Applied | | 322972 | Barker,Melissa J |
| 99 | King,Nathan R. | 285623 | 1005355 | 110 Filled/Closed | Access DFW Trusted Agent | 5/4/21 | 010 Applied | | 242799 | Escobar Diaz,Vanessa Maribel |
| 100 | King,Nathan R. | 285623 | 1005357 | 110 Filled/Closed | Corporate Aviation Representative | 5/4/21 | 010 Applied | | 364136 | Courson,Daniel Howard |
| 103 | King,Nathan R. | 285623 | 1005355 | 110 Filled/Closed | Access DFW Trusted Agent | 5/17/21 | 010 Applied | | 242799 | Escobar Diaz,Vanessa Maribel |
| 106 | King,Nathan R. | 285623 | 1005357 | 110 Filled/Closed | Corporate Aviation Representative | 5/17/21 | 010 Applied | | 364136 | Courson,Daniel Howard |
| 107 | King,Nathan R. | 285623 | 1005376 | 110 Filled/Closed | Assistant Airfield Operations Officer | 5/17/21 | 010 Applied | | 371309 | Keller,Thomas N |
| 114 | King,Nathan R. | 285623 | 1005347 | 110 Filled/Closed | Health & Wellness Coordinator | 5/30/21 | 010 Applied | | 353913 | Smith,Shalesa M |
| 115 | King,Nathan R. | 285623 | 1005376 | 110 Filled/Closed | Assistant Airfield Operations Officer | 5/30/21 | 010 Applied | | 371309 | Keller,Thomas N |
| 116 | King,Nathan R. | 285623 | 1005396 | 110 Filled/Closed | Parking Operations Communications Spec | 5/30/21 | 010 Applied | | 359483 | Escalante,Ada A |
| 123 | King,Nathan R. | 285623 | 1005388 | 110 Filled/Closed | Time & Attendance Specialist | 6/3/21 | 010 Applied | | 263235 | Ford,Darsherika L |
| 124 | King,Nathan R. | 285623 | 1005412 | 110 Filled/Closed | Airfield Operations Officer | 6/3/21 | 010 Applied | | 360938 | Legarreta,Sidney K |
| 126 | King,Nathan R. | 285623 | 1005424 | 110 Filled/Closed | Ground Transportation Administrative Sp | 6/3/21 | 010 Applied | | 288352 | Stewart,Candace L |
| 129 | King,Nathan R. | 285623 | 1005424 | 110 Filled/Closed | Ground Transportation Administrative Sp | 6/12/21 | 010 Applied | | 288352 | Stewart,Candace L |
| 132 | King,Nathan R. | 285623 | 1005467 | 110 Filled/Closed | Police Records Management Coordinator | 6/12/21 | 010 Applied | | 252494 | White,Claudia Teresa |

(*See id.*)

### *3. Plaintiff's post-termination applications are not applications for reassignment.*

Plaintiff argues that a series of job application denial letters constitute evidence that he applied for jobs outside of the online portal between August and November 2020. (Pl.'s Resp. at 23). However, when you compare the denial letters to the screenshot Plaintiff produced showing his applications through the online job portal, it is clear that the denial letters are all in response to positions applied for post-termination. (*See* Pl.'s Job Application Portal Screenshots; Def.'s Mot. App. 213-215; *see also* Pl.'s Ex. S; Pl.'s Resp. App. at 508-25). For example, according to Plaintiff's screenshot, he submitted an application for a Health & Wellness Coordinator position with Job ID 1005347 on January 10, 2021 and May 30, 2021. (*See* Pl.'s Job Application Portal Screenshots; Def.'s Mot. App. 214). Plaintiff received a denial letter for this position on June 2, 2021. (Pl.'s Ex. S; Pl.'s Resp. App. at 513). It should also be noted that the denial letters are sent through an automated system. (*See* Pl.'s Ex. S; Pl.'s Resp. App. at 508-25). The denial letters fail to raise a fact issue that Plaintiff applied for any positions to be considered for reassignment between August and November 2020.

As Plaintiff has failed to raise a fact issue concerning whether he submitted any applications for positions to be considered for reassignment between August and November 2020, summary judgment should be granted for Defendant on Plaintiff's disability discrimination claim. Plaintiff did not show DFW at the time, and cannot show the Court now, that a position was available for which he was qualified and to which he applied to be considered for reassignment as to be considered a qualified individual under the ADA. Defendant is further entitled to summary judgment on Plaintiff's disability and retaliation claims because: (1) Plaintiff cannot show DFW refused to reassign him because of his disability rather than his failure to apply through the online portal or his failure to identify any position for which he was qualified; and (2) Plaintiff cannot

show he suffered an adverse employment action by DFW allegedly refusing to reassign him when he never applied through the online portal for a position to be considered for reassignment.

### C. Summary Judgment Is Proper on Plaintiff's Claims Because Plaintiff Cannot Show DFW's Legitimate Nondiscriminatory Nonretaliatory Reason for Plaintiff's Termination is Pretext.

Plaintiff was administratively terminated because he exhausted the maximum amount of short-term disability leave available under DFW policy. In his Response, Plaintiff simply concludes Defendant's reasoning is "unworthy of credence" because Defendant knew that if it did not reinstate him to his CSO position or reassign him he would be terminated because he would run out of leave. (Pl.'s Resp. at 26 and 29). However, Plaintiff cites no evidence to support this conclusory statement, and Plaintiff misunderstands what type of leave he was accruing and how it was accruing. Plaintiff seems to think leave without pay counted toward the 180-days of short-term disability leave he was allotted under DFW policy. This is incorrect. Only short-term disability leave counts toward the 180-day allotment. (M. Young Decl. at ¶ 3 and Ex. 1; Def's Mot. App. at 040 and 045). Plaintiff simply states he was on short-term disability leave while his appeal was pending and while he was pursuing a reasonable accommodation, and was therefore accruing short-term disability leave, but he was not. On April 20, 2020, when Plaintiff submitted his second application for short-term disability leave, had only accrued 65 days of short-term disability leave. (*Id*. at ¶ 9 and Ex. 9; Def.'s Mot. App. 041 and 060). On June 18, 2020, Matrix denied Plaintiff's application for short-term disability leave due to inadequate medical documentation. (*Id*.). It was not until September 21, 2020, following the denial of his request for a reasonable accommodation and during his attempts to be reassigned, that Plaintiff appealed Matrix's June 18 denial of his application for short-term disability leave. (*Id*. at ¶ 9 and Exs. 10 and 11; Def.'s Mot. App. 041, 061, and 062). Plaintiff was not on short-term disability leave during this time. Plaintiff was on

unpaid leave. It was not until November 4, 2020, when Plaintiff's appeal resulted in Matrix reversing its decision to deny Plaintiff's application for short-term disability leave, that Plantiff was retroactively considered to have been on short-term disability leave from April 25, 2020 to August 19, 2020. Plaintiff was not racking up short-term disability and DFW did not simply select an exhaustion date.

Plaintiff's argument in his Response is entirely conclusory and cites to no evidence in support of his statement that the accrual of 180 days of short-term disability was not the real reason for Plaintiff's administrative termination. Plaintiff his cited no evidence that raises a genuine issue of material fact that Defendant's legitimate nondiscriminatory, nonretaliatory reason for terminating Plaintiff was pretext. Therefore, summary judgment should be granted for Defendant.

### III. CONCLUSION

For these reasons and the reasons provided in its Brief in Support of its Motion for Summary Judgment, Dallas-Fort Worth International Airport Board respectfully requests that the Court grant its Motion for Summary Judgment and that all of Plaintiff's claims be dismissed as a matter of law.

Respectfully submitted,

By: */s/ Caroline C. Harrison*

Caroline C. Harrison
State Bar No. 24046034
charrison@phamharrison.com
Spencer M. Mainka
State Bar No. 24116707
smainka@phamharrison.com
PHAM HARRISON, LLP
505 Pecan Street, Suite 200
Fort Worth, Texas 76102
(817) 632-6300
(817) 632-6313 – Fax

**ATTORNEYS FOR DEFENDANT**

## CERTIFICATE OF SERVICE

The undersigned hereby acknowledges that a true and correct copy of the above-mentioned document was served in accordance with the Federal Rules of Civil Procedure on this the 14th day of July, 2023 on counsel for Plaintiff as follows:

Wes Dauphinot
Law Offices of Wes Dauphinot, P.C.
900 West Abram
Arlington, Texas 76103
wes@dauphinotlawfirm.com

Hani F. Kobty
Kobty Law Firm
900 West Abram
Arlington, Texas 76103
hani@kotbylawfirm.com

**ATTORNEYS FOR PLAINTIFF**

*/s/ Caroline C. Harrison*
Caroline C. Harrison