UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

**NATHANIEL KING,**

   Plaintiff,

v.                                                  No. 4:22-cv-00929-P

**DFW INTERNATIONAL AIRPORT BOARD,**

   Defendant.

## MEMORANDUM

Before the Court is Defendant's Motion for Summary Judgment. ECF No. 20. Having considered the briefing and evidence of record, the Court concludes the Motion should be and hereby is **GRANTED**. Accordingly, Plaintiff's Motion for Summary Judgment (ECF No. 19), Plaintiff's Motion for Leave to File Supplementary Declaration (ECF No. 30), Defendant's Motion to Strike (ECF No. 32), and Defendant's Motion in Limine (ECF No. 39) are **DENIED as moot**.

## BACKGROUND

Plaintiff Nathaniel King was hired by Defendant DFW International Airport Board ("DFW") in February 2016 as a Civilian Security Officer ("CSO"). At the time of his hiring, King notified DFW he was being treated for the following conditions at the Veteran's Administration: sciatica, herniated discs in his lower back, degenerative disc disorder, arthritis in both hips, arthritis in both knees, and flat feet. In February 2017, King requested leave under the Family and Medical Leave Act ("FMLA") for one week. He did so again in November 2017 for a period of one week.

On November 14, 2019, King requested short-term disability leave retroactive to November 9th through Matrix Absence Management, Inc. ("Matrix"). Matrix was DFW's contracted third-party administrator for review and decisions on employee leaves of absence as well as requests for accommodations. Upon his return from short-term leave on January

13, 2020, King possessed a list of restrictions affecting his duties. DFW then temporarily assigned King to a CSO post at the E Dock under DFW's Modified Duty Policy upon the determination that this was the only place King could work with his restrictions. CSOs are typically assigned to work various posts around the airport on a rotating schedule that varies by shift. There are a total of 25 posts that a CSO can be assigned to on any shift, depending on the needs of the airport. After a few weeks at this new post, King requested that he be moved to a more administrative position, a request which DFW denied.

In April 2020, King surpassed the sixty-day limit that DFW has for employees to work under modified duty. He was then informed that he needed to reapply for short-term disability with Matrix, as his restrictions had not changed and the duration of time he would need these restrictions was uncertain. On April 20, 2020, King reapplied, but was denied by Matrix on June 18, 2020, due to "inadequate medical documentation." During this process, King also took steps to obtain a "reasonable accommodation" for his disabilities. On August 25, 2020, DFW and King partook in a virtual interactive meeting to discuss King's accommodation request. The attendees at this meeting were King, Carl Young, a HR Representative, Mark Young, a Risk Management Representative, Timm Richardson, a Matrix Representative, and Barry Stevens, Senior Manager of Airport Security. At the meeting, Stevens informed King that he could not be reassigned to a slower post because all CSOs were expected to work any post depending on the needs of the airport. DFW eventually denied King's request for accommodation and encouraged him to scan the online job portal for any positions he believed he might be qualified for.

On September 21, 2020, King appealed Matrix's June 18, 2020 denial of his application for short-term disability leave. Later, on November 4, 2020, Matrix reversed their initial decision to deny King short-term disability leave and King was granted leave retroactive to April 25, 2020. DFW's short-term disability policy allows a maximum of 180 days of leave within a twelve-month period. Considering King used sixty-five days of leave during his first stint (November 9, 2019 – January 13,

2020), he received 115 days of leave under his successful appeal. This l80-day clock expired on August 19, 2020.[1]

DFW terminated King on December 11, 2020 for exhausting the maximum 180 days of short-term leave allowed within a twelve-month period.

On October 17, 2022, King filed suit against DFW where he claims he has been discriminated and retaliated against based upon his disability in violation of the Americans with Disabilities Act. DFW now moves for summary judgment on all of King's claims.

## LEGAL STANDARD

Summary judgment is proper if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A dispute is "genuine" if the evidence presented would allow a reasonable jury to return a verdict in favor of the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 242–43 (1986). A fact is "material" if it would affect a case's outcome. *Id.* at 248. Generally, the "substantive law will identify which facts are material," and "[f]actual disputes that are irrelevant or unnecessary will not be counted." *Id.* In assessing whether summary judgment is appropriate, the Court views evidence in the light most favorable to the nonmovant. *Cunningham v. Circle 8 Crane Servs., LLC*, 64 F.4th 597, 600 (5th Cir. 2023). The Court may rely on any evidence of record but need only consider those materials cited by the parties. FED. R. CIV. P. 56(c)(1)–(3); *see generally Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (noting summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law"). But the Court need not mine the record for evidence supporting the nonmovant; the burden falls on the moving party to simply show a lack of evidence

---

[1] Since the granting of leave was retroactive, there was no way to know the date of expiration until after the November 4, 2020 reversal by Matrix.

3

supporting the nonmovant's case. *See Malacara v. Garber*, 353 F.3d 393, 404–05 (5th Cir. 2003).

## ANALYSIS

DFW seeks summary judgment on each of King's claims: disability discrimination and retaliation. The Court addresses the discrimination claim first and then proceeds to the retaliation claim.

### A. ADA Disability Discrimination.

The Americans with Disabilities Act ("ADA") prohibits discrimination by employers against qualified individuals on the basis of disability. *See* 42 U.S.C. § 12112. The ADA was designed to remove barriers that prevent otherwise qualified individuals from enjoying employment opportunities available to persons without disabilities. *See Taylor v. Principal Fin. Grp., Inc.*, 93 F.3d 155, 161 (5th Cir. 1996). A person is disabled under the ADA if he: (1) has a physical or mental impairment that substantially limits one or more of the major life activities; (2) has a record of such impairment; or (3) is regarded as having such an impairment. 42 U.S.C. § 12102(2). The ADA Amendments Act of 2008 made it "easier for people with disabilities to obtain protection under the ADA." *Cannon v. Jacobs Field Servs. N. Am., Inc.,* 813 F.3d 586, 590 (5th Cir. 2016).

There are two avenues available for an employee to show ADA discrimination with respect to termination: (1) the employee can present direct evidence; or (2) they can rely on circumstantial evidence and then shift the burden to the employer to provide explanation. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 800–01 (1973). Given that "direct evidence is rare" and has been defined by the Fifth Circuit as evidence which "if believed, proves the fact without inference or presumption," it is not often that there is proof of any direct discrimination in a discrimination claim. *Clark v. Champion Nat'l Sec., Inc.*, 952 F.3d 570, 579 (5th Cir. 2020) (internal citations omitted). Since King makes no claim of direct discrimination in this case, the Court analyzes King's discrimination claim under the second, burden shifting test in *McDonnell Douglas*.

4

1. <u>Discrimination Claim.</u>

Under *McDonnell Douglas*, to establish a *prima facie* discrimination claim under the ADA, King must show "(1) [he] has a disability, or was regarded as disabled; (2) he was qualified for his [CSO job]; and (3) he was subject to an adverse employment decision on account of his disability." *Weems v. Dall. Indep. Sch. Dist.*, 260 F. Supp. 3d 719, 727 (N.D. Tex. 2017) (internal citations omitted). If King can satisfy these factors, a presumption of discrimination arises, and DFW must then demonstrate a "legitimate non-discriminatory reason for the adverse employment action." *Id.* Upon articulating any supposed non-discriminatory reasons for the action, the burden shifts back to King to produce evidence from which a jury could conclude that the "employer's articulated reason is pretextual" *Id*.

*First*, King must show that he was disabled. DFW does not dispute this factor. *See generally* ECF Nos. 21 and 31. For this reason, the Court focuses on the latter two prongs of the *McDonnell Douglas* test and assumes, for the sake of ruling on this summary judgment motion, that King has a disability.

*Second,* King must show that was qualified for his CSO job. Courts have held that, in order to be considered a qualified individual, a plaintiff must demonstrate he can "perform the essential functions of the job despite [his] disability," or be able to perform the essential functions of the job given a "reasonable accommodation" by the employer. *Stephens v. Big Spring Herald, Inc.*, No. 1:19-CV-123-H, 2021 WL 3030064 at *9 (N.D. Tex. Mar. 29, 2021) (Hendrix, J.). In determining whether a job function is essential, courts owe deference to an employer's position description, but this deference is not absolute, and it is important to determine what actual functions the employer requires employees to perform. *Id.*

DFW asserts that King cannot satisfy this second element of his *prima facie* case. DFW sets forth as evidence a list of the essential functions of the CSO position. These essential duties are as follows:

- Climb into, out of, and search under vehicles;

- Work in awkward positions such as kneeling, stooping, or squatting;
- Drive to locations on DFW Airport property, including the Air Operations Area;
- Sit for extended periods of time; and
- Walk for extended periods of time.

ECF No. 22 at 6.

Now, in juxtaposition, King presents the list of physical limitations from his reasonable accommodation form, with support from his doctor, that he claims would allow him to perform the essential duties of his position. They accommodations are as follows:

- Adjust physical activities: 30 minutes out of vehicle every 2 hours;
- No sitting or standing more than 5x per 30 minutes;
- Cannot lift heavy items more than 5x per hour;
- If needed to walk for more than an hour, 15 minutes of rest is needed per hour;
- No standing more than 20 minutes per hour;
- Allow use of elevator or limit stair use to once per 2 hours.

ECF No. 23 at 70.

Throughout the litigation, there has been much discourse from both parties as to what qualifies as "extended" and whether, under the accommodations requested by King, he would still be able to perform the essential functions of the job despite his disability. *See* ECF Nos. 19-1, 21, 27, 28, 31. It is the Court's viewpoint that this arises to the level of a dispute of material fact. The Court acknowledges that King does not retort when Mark Young tells him "It does not appear that [King's] restrictions from [King's] doctor will allow [King] to do the essential functions of your job." ECF No. 22 at 205. Instead, King simply responds "Okay" and asks if there are other positions that would be willing to accommodate him. *Id.* However, the Court need not address whether King was able to perform the essential functions of the job despite his disability because his *prima facie* discrimination claim fails on its face as he does not satisfy the third prong of *McDonnel Douglas*.

*Third*, even if the Court assumes that King could have performed the essential functions of the job despite his disability (it does not), King

would still need to show that he was subject to an adverse employment decision on account of his disability. *See Weems* F. Supp. 3d at 727. He fails to do so.

To satisfy the third prong of *McDonnell*, King must proof of a causal connection between an adverse employment action and his disability. *See Rodriguez v Eli Lilly & Co.* 820 F3d 759, 765 (5th Cir. 2016*)*. King claims it was an adverse employment decision for DFW to terminate him as well as for DFW to not reassign him to different position. *See* ECF No. 27 at 24–27. There is no question that King faced an adverse employment decision when he was terminated, but where he falls short is in presenting how his administrative termination was due to his disability. The reason King was administratively terminated was that he exhausted the total amount of leave he was allotted in a twelve-month period. *See* ECF No. 22 at 44, 66. Irrespective of his disability, or any other reason, once he used his 180 days of leave, he was going to be, and was, terminated.

Turning to his other supposed adverse employment decision, King attests DFW could have reassigned him to any number of positions that he allegedly applied for between August and November 2020, but they chose not to because of his disability. *See* ECF No. 1 at 6–7. King claims this allowed for his 180 days of leave to lapse and for him to be administratively terminated. *Id*. Put shortly, King claims that DFW's failure to reassign him was also an adverse employment decision because it was done on account of his disability and ultimately led to him being administratively terminated. While King asserts he applied for jobs that he was qualified for which could have prevented his administrative termination, he provides no support for the notion his disability played a factor in him not being chosen for any of the positions. *See* ECF No. 27 at 21–22. Further, DFW argues, and the Court is inclined to agree, King did not submit applications for positions to be considered for reassignment. *See* ECF No. 21 at 18–20. King claims that he applied for positions through Carl Young via email, and that he did not have access to the portal to apply for new positions. *See* ECF No. 27-1 at 174–76; ECF No. 27 at 22. But King used the portal to apply for jobs *before* he was hired at DFW and *after* he was administratively

7

terminated. *See* ECF No. 27-1 at 293–96. During these time periods King would seemingly not have access to the portal under the logic he expounds upon in his briefing—that he cannot access the portal from his home computer. *See id.* at 174. In fact, of the 40+ official applications King submitted, exactly zero were submitted between August 25, 2020 and December 11, 2020, the dates King would need to be searching for reassignment. *See id.* at 293–96.

Further, taking arguendo that King did not have access to the portal between August 2020 and December 2020, there is nothing in the record showing he made any effort to try to gain access to the portal. *See id.* at 174–76. This is particularly perplexing given it seems clear he knew he needs access to the portal to apply given his *ex-ante* and *post-hoc* applications. Specifically, it seems conspicuous that King could not apply through the portal since he was not at his office, but then miraculously gained access to said portal just weeks after his termination, when he submitted an application on December 27, 2020. *Id* at 294. Accordingly, King has failed to show how not being reassigned to a new position before his leave lapsed was an adverse employment decision due to his disability, since he never submitted any actual applications to be considered. And even if the emails he sent Carl Young were treated as applications, he did not expound on how he was adequately qualified or how any decision to not hire him was on account of his disability and not a decision on merit. *See id.* at 324–31; *Cortez v. Raytheon Co.*, 663 F. Supp. 2d 514, 526 (N.D. Tex. 2009) (holding employer has no duty to reinstate plaintiff or help him be rehired by notifying him of open positions). Since King has failed the third prong, he has failed to prove he has a *prima facie* case for discrimination under *McDonnell Douglas*.

\* \* \*

Even if King was able to make a *prima facie* case, if DFW is able to demonstrate a "legitimate non-discriminatory reason for the adverse employment action," then the burden shifts back to King to produce evidence that employer's reason is pretextual. *Weems* 260 F. Supp. at 727. King must offer sufficient evidence to create a genuine issue of

8

material fact "either (1) that the defendant's reason is not true, but is instead a pretext for discrimination (pretext alternative); or (2) that the defendant's reason, while true, is only one of the reasons for its conduct, and another motivating factor is the plaintiff's protected characteristic (mixed-motive alternative)." *Rachid v. Jack In The Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004). As addressed above, King's administrative termination, while an adverse employment action, was based solely on DFW's non-discriminatory and neutral leave policy which King had violated upon exhausting his 180 days. *See* ECF No. 22 at 44, 66. Rather than offer any specific facts to establish that this reasoning is pretextual, King simply calls DFW's explanation "unworthy of credence." ECF No. 27 at 26. Thus, King is unable show any pretextual reasons for DFW administratively terminating King for violating the policy, as the policy was non-discriminatory and applied neutrally. *See Diggs v. Burlington N. & Santa Fe Ry. Co.*, 742 F. App'x. 1, 5 (5th Cir. 2018) (holding evidence that a leave policy was applied differently to Plaintiff is needed if a pretextual reason is to be applied to a termination under the policy).

DFW's supposed reason for not reassigning King to a new position was because he simply did not apply for any positions through the standard process of the online portal. *See* ECF No. 21 at 23–24. This once again is a non-pretextual reason for not reassigning King. King cannot be reassigned when he never properly applied to be reassigned. The Court does not find King's argument that he submitted applications through his emails to Carl Young convincing, as it is clear that he was aware of the application process and, even if he lacked access to the portal, made no efforts to communicate with DFW that he lacked access in order to submit applications. *See* ECF No. 27-1 at 324–31. At one point, Young even tells King he needs to "apply for these [jobs] through the normal process." *Id.* at 324. Even assuming arguendo that he submitted applications through his sporadic emails to Young, he offers no reason or proof as to why he was not hired on account of his disability for any of the positions he claims he applied to. *See id. generally*. It is well-settled that DFW has no obligation to reassign King because he expresses a desire to be reassigned. *See Foreman v. Babcock & Wilcox*

9

*Co.*, 117 F.3d 800, 810 (5th Cir. 1997) (holding employer has no obligation to accommodate disabled Plaintiff by reassigning him to a new position); *Cortez*, 663 F. Supp. 2d at 526. King still needs to show how him not being reassigned was discriminatory on account of his disability, which he fails to do. It is also worth noting that *all* the denial letters from DFW that King presents were from positions he submitted applications for *after* December 11, 2020. *See* ECF No. 27-1 at 510–27; ECF No. 27-1 at 293–96. These have no bearing on whether DFW was deliberately trying to avoid reassigning King because they were all positions he applied for after he had been terminated. Therefore, King is unable to provide evidence that DFW's reason for administratively terminating him and not reassigning him was pretextual.

For these reasons, there is no genuine dispute of material fact regarding King's discrimination claim. Accordingly, the Court **GRANTS** Defendant's Motion for Summary Judgment with respect to Mr. King's discrimination claim.

### B.   ADA Retaliation Claim.

King also brings claims for retaliation under the ADA. *See* ECF No. 1 at 7. To establish a *prima facie* case for retaliation, and avoid summary judgment, a plaintiff must demonstrate that: (1) he engaged in an activity protected by the ADA; (2) he suffered an adverse employment action; and (3) there is a causal connection between the protected act and the adverse action. *See Lyons v. Katy Indep. Sch. Dist.,* 964 F.3d 298, 304 (5th Cir. 2020).

*First*, King must show that he engaged in a protected activity under the ADA. It is undisputed that making requests for reasonable accommodations under the ADA constitutes engaging in protected activity. *See Jenkins v. Cleco Power, LLC,* 487 F.3d 309, 317 (5th Cir. 2007) (holding that an employee claiming retaliation for requesting reasonable accommodations established a *prima facie* case of retaliation under ADA). King did that here. *See* ECF No. 27-1 at 3–7.

*Second,* King must show he suffered an adverse employment action. King's termination serves as an undisputed adverse employment action here. *See* ECF No. 22 at 66. However, King also claims he faced and

adverse employment action in DFW refusing to reassign him to a different position that could accommodate his disabilities. *See* ECF No. 27 at 27–28. The Court does not consider DFW's alleged refusal to consider King's alleged applications an adverse action because, as the Court has explained, under DFW policy and through King's apparent understanding, King did not apply through the online portal during the period in which he would need reassignment to avoid termination. Thus, DFW could not reassign him because he never submitted any applications. Further, DFW had no obligation to reassign King simply because he asked to be reassigned. *See Foreman*, 117 F.3d at 810.

*Third,* King must show there was a causal connection between his request for reasonable accommodations and his termination. Here, King claims his termination was due to his short-term disability leave expiring, a result of having his request for reasonable accommodations denied by DFW. *See* ECF No. 1 at 6–7. Therefore, King's *prima facie* case for retaliation turns on whether King would not have been terminated but for his request for accommodations. *Lyons,* 964 F.3d at 304. For the reasons stated below, the Court does not believe there is such connection.

Courts routinely hold that a *prima facie* case can be made if an employee has proof that the protected activity was followed shortly by an adverse action. *See, e.g.*, *Strong v. Univ. Healthcare Sys., L.L.C.*, 482 F.3d 802, 808 (5th Cir. 2007) (holding that temporal proximity alone, when very close, can in some instances establish a *prima facie* case of retaliation). King does not make the argument that temporal proximity alone is enough to establish his case for causal connection, likely because the Fifth Circuit has held that a period of five months cannot *itself* sustain an inference of causal connection. *See Raggs v. Miss. Power & Light Co.,* 278 F. 3d 463, 471–72 (5th Cir. 2002). Here, Plaintiff submitted his request for accommodation in July 2020 and was terminated in December 2020, a period of five months. *See* ECF No. 27-1 at 3–7 and ECF No. 22 at 44. A period of time which this Circuit has deemed insufficient to sustain an inference of causal connection. *See Raggs*, 278 F. 3d at 471–72.

11

King argues that DFW intentionally did not grant his accommodations so his 180-day leave quantity would exhaust and he would be terminated. *See* ECF No. 27 at 25–26. This argument falls short as King presents no facts or proof to support such as accusation. It is merely presented as a conclusion: DFW did not accommodate King because they wanted his 180 days to exhaust and for him to be terminated. The Court is not convinced. *First*, DFW is not responsible for granting short-term disability, Matrix is, so the ability for gamesmanship with King's leave in order to have him terminated is outside of their control. *See* ECF No. 22 at 39–40. *Second*, throughout the process, DFW was advising King to apply for different positions, an action which he chose not to do through the correct channels. *Id.* at 206–07. King simply has not shown a causal connection between his request for accommodations and his administrative termination beyond stating mere conclusory allegations. These types of arguments are not sufficient to defeat a summary judgment motion. *See Eason v. Thaler,* 73 F.3d 1322, 1325 (5th Cir. 1996); *also Holmes v. N. Tex. Health Care Laundry Coop. Ass'n,* 304 F. Supp. 3d 525, 539 (N.D. Tex. 2018) (Lindsay, J.).

\* \* \*

Taking arguendo that King established a *prima facie* case for retaliation, DFW must then present a legitimate, non-discriminatory reason for terminating King's employment. *Lyons,* 964 F.3d at 306. King then must show that DFW's given reason is not the actual reason and was just a façade to discriminate against him based on his disability. *Id.* Like his discrimination pretextual argument, other than calling the reason "unworthy of credence," and a conclusory statement that DFW should have assisted King in being hired for a new position, King provides no facts or evidence as to why King's administrative termination was pretextual. ECF No. 27 at 31. Given DFW's leave policy is neutral and non-discriminatory and King did not submit any official applications nor provided any actual basis for why he was qualified for any of positions he sent sporadic emails about, it makes sense King's only pretextual argument is conclusory. *See Diggs,* 742 F. App'x. at 5; *Cortez,* 663 F. Supp. 2d at 526. As such, his arguments fail and the Court

**GRANTS** DFW's Motion for Summary Judgment with respect to King's retaliation claim.

### CONCLUSION

For the above reasons, the Court concludes that Defendant's Motion for Summary Judgment (ECF No. 20) should be and hereby is **GRANTED**. Accordingly, Plaintiff's Motion for Summary Judgment (ECF No. 19), Plaintiff's Motion for Leave to File Supplementary Declaration (ECF No. 30), Defendant's Motion to Strike (ECF No. 32), and Defendant's Motion in Limine (ECF No. 39) are **DENIED as moot**.

**SO ORDERED** on this **6th day of October 2023.**

_/s/ Mark T. Pittman_
Mark T. Pittman
UNITED STATES DISTRICT JUDGE